FILED _____   ENTERED _____
LODGED _____   RECEIVED _____

NOV 01 2019 SP

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA, STATE OF
CALIFORNIA, STATE OF DELAWARE,
DISTRICT OF COLUMBIA, STATE OF
FLORIDA, STATE OF ILLINOIS, STATE OF
IOWA, STATE OF MARYLAND,
COMMONWEALTH OF MASSACHUSETTS,
STATE OF MINNESOTA, STATE OF
MONTANA, STATE OF NEW JERSEY,
STATE OF NEW MEXICO, STATE OF NEW
YORK, STATE OF RHODE ISLAND,
COMMONWEALTH OF VIRGINIA, *EX. REL.*
ROBERT G. LEE,

        Plaintiffs,

    v.

FIRSTSPEAR, LLC, POINT BLANK
ENTERPRISES, INC., CENTRAL LAKE
ARMOR EXPRESS, INC., KDH DEFENSE
SYSTEMS, INC., and SAFARILAND, LLC,

        Defendants.

**19  CV  01778** RSM

**COMPLAINT AND JURY DEMAND
FILED UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(b)(2)**

Date Action Filed:  *

**FILED UNDER SEAL**

COMPLAINT & JURY DEMAND
FILED UNDER SEAL -

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200, Seattle
Seattle, Washington 98101-3052
TELEPHONE: AuthorOfficeGeneralNo1
FACSIMILE: AuthorOfficeFaxNo1

# TABLE OF CONTENTS

I.      NATURE OF THE ACTION ................................................................................. 1

II.     JURISDICTION AND VENUE ............................................................................. 3

III.    PARTIES .............................................................................................................. 5

    A.      Plaintiffs .................................................................................................... 5

    B.      Relator ....................................................................................................... 6

    C.      Defendants ................................................................................................. 6

        1.      FirstSpear, LLC .............................................................................. 6

        2.      Point Blank Enterprises, Inc. ......................................................... 6

        3.      Central Lake Armor Express, Inc. .................................................. 7

        4.      KDH Defense Systems, Inc. ........................................................... 7

        5.      Safariland, LLC .............................................................................. 8

IV.     STATUTORY BACKGROUND ........................................................................... 8

    A.      The Federal False Claims Act .................................................................... 8

    B.      State False Claims Acts ............................................................................ 10

        6.      California False Claims Act .......................................................... 10

        7.      Delaware False Claims and Reporting Act ................................... 11

        8.      District of Columbia False Claims Act ......................................... 12

        9.      Florida False Claims Act .............................................................. 13

        10.     Illinois False Claims Act .............................................................. 13

        11.     Iowa False Claims Act .................................................................. 14

        12.     Maryland False Claims Act .......................................................... 15

        13.     Massachusetts False Claims Act ................................................... 16

        14.     Minnesota False Claims Act ......................................................... 17

        15.     Montana False Claims Act ............................................................ 18

COMPLAINT & JURY DEMAND
FILED UNDER SEAL -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200, Seattle
Seattle, Washington 98101-3052
TELEPHONE: AuthorOfficeGeneralNo1
FACSIMILE: AuthorOfficeFaxNo1

|  |  | 16. | New Jersey False Claims Act | 20 |
|  |  | 17. | New Mexico Fraud Against Taxpayers Act | 20 |
|  |  | 18. | New York False Claims Act | 22 |
|  |  | 19. | Rhode Island False Claims Act | 23 |
|  |  | 20. | Virginia Fraud Against Taxpayers Act | 24 |
| V. |  |  | ALLEGATIONS OF FACT | 25 |
|  | A. |  | Body Armor and Accessory Panels are Important Safety Equipment. | 25 |
|  | B. |  | Pursuant to Mandate, NIJ Runs a Body Armor Standard and Testing Program. | 26 |
|  | C. |  | NIJ Standard-0101.06 Establishes Minimum Performance Requirements for Ballistic Resistance of Body Armor. | 28 |
|  |  | 1. | NIJ Does Not Certify Accessory Panels to NIJ Standard-0101.06. | 31 |
|  |  | 2. | Accessory Panel Labels Must Not Claim NIJ Standard-0101.06 Compliance. | 32 |
|  | D. |  | Relator Discovers the Defendants' False Claims. | 33 |
|  | E. |  | Defendants Falsely Advertise Accessory Panels. | 42 |
|  |  | 1. | FirstSpear | 43 |
|  |  | 2. | Point Blank | 44 |
|  |  | 3. | Armor Express | 46 |
|  |  | 4. | KDH Defense Systems | 49 |
|  |  | 5. | Safariland | 52 |
|  | F. |  | Defendants Presented False Claims to the Government. | 56 |
|  |  | 1. | Defendants' False Statements were Material to Government Purchases. | 56 |
|  |  | a. | Federal Agencies Require NIJ Standard-0101.06 Protection. | 56 |

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b.      NASPO ValuePoint Master Agreement Requires NIJ Standard-0101.06 Protection.................................................. 57

c.      State and Local Agencies Require NIJ Standard-0101.06 Protection in their Direct Purchases............................. 58

2.      Federal Agencies Purchased and/or Subsidized the Purchases of Defendants' Falsely Labeled Accessory Panels. ..................................................................................................... 60

a.      Federal Agencies Purchased Accessory Panels. ......................... 60

b.      Federal Reimbursement Program Funds Were Used to Reimburse State and Local Governments for Their Accessory Panel Purchases. ............................................. 62

3.      State and Local Agencies Purchased Defendants' Falsely Labeled Accessory Panels.................................................................... 64

a.      California ...................................................................... 64

b.      Delaware ....................................................................... 65

c.      District of Columbia ........................................................ 65

d.      Florida .......................................................................... 65

e.      Illinois .......................................................................... 66

f.      Iowa............................................................................. 66

g.      Maryland ....................................................................... 66

h.      Massachusetts ................................................................ 67

i.      Minnesota...................................................................... 67

j.      Montana ........................................................................ 68

k.      New Jersey ..................................................................... 68

l.      New Mexico.................................................................... 68

m.      New York....................................................................... 69

n.      Rhode Island .................................................................. 69

o.      Virginia ......................................................................... 70

COMPLAINT AND JURY DEMAND
FILED UNDER SEAL - iii

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

p.  Washington ............................................................................. 70

VI.  CAUSES OF ACTION ...................................................................... 72

COUNT ONE — Violations of the False Claims Act
31 U.S.C. § 3729(a)(1)(A) ...................................................... 72

COUNT TWO — Violations of the False Claims Act
31 U.S.C. § 3729(a)(1)(B) ...................................................... 73

COUNT THREE — Violations of the California False Claims Act
Cal. Gov't Code § 12651(a)(1) ............................................... 76

COUNT FOUR — Violations of the California False Claims Act
Cal. Gov't Code § 12651(a)(2) ............................................... 77

COUNT FIVE — Violations of the California False Claims Act
Cal. Gov't Code § 12651(a)(8) ............................................... 79

COUNT SIX — Violations of the Delaware False Claims and Reporting Act
Del. Code Ann. tit. 6, § 1201(a)(1) ........................................ 81

COUNT SEVEN — Violations of the Delaware False Claims and Reporting Act
Del. Code Ann. tit. 6, § 1201(a)(2) ........................................ 83

COUNT EIGHT — Violations of the District of Columbia False Claims Act
D.C. Code § 2-381.02(a)(1) .................................................. 85

COUNT NINE — Violations of the District of Columbia False Claims Act
D.C. Code § 2-381.02(a)(2) .................................................. 86

COUNT TEN — Violations of the District of Columbia False Claims Act
D.C. Code § 2-381.02(a)(8) .................................................. 88

COUNT ELEVEN — Violations of the Florida False Claims Act
Fla. Stat. § 68.082(2)(a) ..................................................... 90

COUNT TWELVE — Violations of the Florida False Claims Act
Fla. Stat. § 68.082(2)(b) ..................................................... 92

COUNT THIRTEEN — Violations of the Illinois False Claims Act
740 Ill. Comp. Stat. 175/3(a)(1)(a) ........................................ 94

COUNT FOURTEEN — Violations of the Illinois False Claims Act
740 Ill. Comp. Stat. 175/3(a)(1)(B) ....................................... 95

COUNT FIFTEEN — Violations of the Iowa False Claims Act
Iowa Code § 685.2(1)(a) ...................................................... 97

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT SIXTEEN — Violations of the Iowa False Claims Act
    Iowa Code § 685.2(1)(b) ................................................................. 99

COUNT SEVENTEEN — Violations of the Maryland False Claims Act
    Md. Code Ann., Gen. Provis. §  8-102(b)(1) ................................. 101

COUNT EIGHTEEN — Violations of the Maryland False Claims Act
    Md. Code Ann., Gen. Provis. §  8-102(b)(2) ................................. 102

COUNT NINETEEN — Violations of the Maryland False Claims Act
    Md. Code Ann., Gen. Provis. §  8-102(b)(9) ................................. 104

COUNT TWENTY — Violations of the Massachusetts False Claims Act
    Mass. Gen. Laws. Ch. 12, § 5B(a)(1) ............................................ 106

COUNT TWENTY-ONE — Violations of the Massachusetts False Claims Act
    Mass. Gen. Laws. Ch. 12, § 5B(a)(2) ............................................ 107

COUNT TWENTY-TWO — Violations of the Massachusetts False Claims Act
    Mass. Gen. Laws. Ch. 12, § 5B(a)(8) ............................................ 110

COUNT TWENTY-THREE — Violations of the Massachusetts False Claims Act
    Mass. Gen. Laws. Ch. 12, § 5B(a)(10) .......................................... 112

COUNT TWENTY-FOUR — Violations of the Minnesota False Claims Act
    Minn. Stat. § 15C.02(a)(1) ........................................................... 114

COUNT TWENTY-FIVE — Violations of the Minnesota  False Claims Act
    Minn. Stat. § 15C.02(a)(2) ........................................................... 115

COUNT TWENTY-SIX — Violations of the Montana False Claims Act
    Mont. Code Ann. § 17-8-403(1)(a) ............................................... 117

COUNT TWENTY-SEVEN — Violations of the Montana False Claims Act
    Mont. Code Ann. § 17-8-403(1)(b) ............................................... 119

COUNT TWENTY-EIGHT — Violations of the Montana False Claims Act
    Mont. Code Ann. § 17-8-403(1)(h) ............................................... 121

COUNT TWENTY-NINE — Violations of the New Jersey False Claims Act
    N.J. Stat. Ann. § 2A:32C-3(a) ...................................................... 123

COUNT THIRTY — Violations of the New Jersey False Claims Act
    N.J. Stat. Ann. § 2A:32C-3(b) ...................................................... 125

COUNT THIRTY-ONE — Violations of the New Mexico Fraud Against
    Taxpayers Act N.M. Stat. Ann. § 44-9-3(A)(1) ............................ 127

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-TWO** — Violations of the New Mexico Fraud Against
    Taxpayers Act N.M. Stat. Ann. § 44-9-3(A)(2) ............................................... 129

**COUNT THIRTY THREE** — Violations of the New Mexico Fraud
    Against Taxpayers Act N.M. Stat. Ann. § 44-9-3(A)(9) ............................... 131

**COUNT THIRTY-FOUR** — Violations of the New York False Claims Act
    N.Y. State Fin. Law § 189(1)(a) ........................................................ 133

**COUNT THIRTY-FIVE** — Violations of the New York False Claims Act
    N.Y. State Fin. Law § 189(1)(b) ........................................................ 135

**COUNT THIRTY-SIX** — Violations of the Rhode Island False Claims Act
    9 R.I. Gen. Laws § 9-1.1-3(a)(1) ...................................................... 137

**COUNT THIRTY-SEVEN** — Violations of the Rhode Island False Claims Act
    9 R.I. Gen. Laws § 9-1.1-3(a)(2) ...................................................... 138

**COUNT THIRTY-EIGHT** — Violations of the Virginia Fraud Against
    Taxpayers Act Va. Code Ann. § 8.01-216.3(A)(1) ......................................... 140

**COUNT THIRTY-NINE** — Violations of the Virginia Fraud Against
    Taxpayers Act Va. Code Ann. § 8.01-216.3(A)(2) ......................................... 142

VII.    PRAYER FOR RELIEF ...................................................................... 143

VIII.   DEMAND FOR JURY TRIAL ................................................................. 144

COMPLAINT AND JURY DEMAND
FILED UNDER SEAL - vi

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

This is a civil *qui tam* action to recover damages and civil penalties on behalf of the United States of America, the State of California, the State of Delaware, the District of Columbia, the State of Florida, the State of Illinois, the State of Iowa, the State of Maryland, the Commonwealth of Massachusetts, the State of Minnesota, the State of Montana, the State of New Jersey, the State of New Mexico, the State of New York, the State of Rhode Island, and the Commonwealth of Virginia (collectively "States"), ex rel. by Robert G. Lee, arising from false statements and claims made and presented by Defendants FirstSpear, LLC, Point Blank Enterprises, Inc, Central Lake Armor Express, Inc., KDH Defense Systems, Inc., and Safariland, LLC, and/or their agents or employees in violation of the *qui tam* provisions of the Federal Civil False Claims Act ("FCA"), pursuant to 31 U.S.C. §§ 3729 *et seq.* as amended, and parallel State statutes.

A written disclosure of all material evidence and information the Relator possesses was served on the United States Government pursuant to 31 U.S.C. § 3730(b)(2) on October 21, 2019. A copy of this complaint will be served on the United States Government pursuant to 31 U.S.C. § 3730(b)(2) and Rule 4(i) of the Federal Rules of Civil Procedure on the date of filing. A copy of the complaint as well as a written disclosure of substantially all material evidence and information the Relator possesses will also be sent to the governments of the States pursuant to State statutes on the date of filing. This complaint is filed in camera, under seal, and may not be served upon the Defendants until further order of this Court.

## I.    NATURE OF THE ACTION

1.     FirstSpear, LLC, Point Blank Enterprises, Inc., Central Lake Armor Express, Inc., KDH Defense Systems, Inc., and Safariland, LLC (collectively "Defendants"), manufacture, market, and sell body armor (also known as "bulletproof" vests[1]) for law enforcement officers. Defendants sell accessory panels to accompany these vests, which are smaller pieces of body armor billed as providing additional protection to the neck, arms, and groin, among other areas, from

---

[1] The term "vests" is not a technical term in the body armor industry and is used in this Complaint for readability. It should be read to refer to ballistic panels and associated carriers designed to provide full torso coverage from gunfire, as described below. *See infra*, at ¶ 84.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

bullets. These accessory panels are worn and relied on by officers engaging in particularly hazardous duties, such as Special Weapons and Tactics ("SWAT") teams. This case is about false claims Defendants made regarding the ballistics protection provided by these accessory panels.

2.      Body armor is critical safety equipment that law enforcement officers need for personal protection to protect against bullet penetrations and blunt force trauma associated with bullet impacts.

3.      As explained in depth below, the National Institute of Justice ("NIJ") publishes a standard and provides a certification and testing program for body armor that law enforcement agencies rely on when making purchases. Products can be certified to different NIJ "threat levels," ranging from protection from small caliber handgun bullets to protection from larger caliber or armor piercing rifle bullets. For example, if a product is certified to NIJ "threat level IIIA," that means it is tested against .357 SIG Full Metal Jacket Flat Nose and .44 Magnum Semi-Jacketed Hollow Point bullets fired from handguns. Body armor passes these tests and can be NIJ certified if, among other things, it prevents the bullet from penetrating the armor and would also minimize injuries from blunt force trauma to the part of the body covered by the armor.

4.      However, NIJ will not certify accessory panels. Any product label claiming that an accessory panel is certified to NIJ Standard-0101.06 is false. In addition, independent testing of several accessory panels at an NIJ-approved laboratory at Relator's request revealed that these panels do not pass the NIJ Standard-0101.06 tests. The level of blunt force trauma that would have been caused by the bullets striking the tested panels was over NIJ's limit imposed to protect against serious injury, such as severing of the spinal cord.

5.      Governments and law enforcement agencies rely on the NIJ standard to ensure that law enforcement officers wearing body armor are adequately protected from threats. Government purchasers of these products typically require the body armor products that they buy to be certified to NIJ Standard-0101.06. To sell accessory panels to government clients, Defendants marketed and labeled their accessory panels as being certified to NIJ Standard-0101.06 or NIJ threat level

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

IIIA and offering the protection that entails. Defendants also falsely marketed and labeled their accessory panels by referencing the names and model numbers of their other certified products, such as full-size bulletproof vests, that had been certified to NIJ Standard-0101.06 or NIJ threat level IIIA. This marketing and labelling was knowingly false within the meaning of the FCA and parallel State statutes.

6.      Governments believed the Defendants' false marketing and labeling, and, as a result of the Defendants' conduct, the Federal Government and the governments of the States[2] purchased the Defendants' falsely labeled accessory panels to protect their law enforcement officers. Defendants' conduct violates the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the false claims acts of each of the States.

7.      Relator Robert G. Lee ("Relator"), through the undersigned attorneys, brings this *qui tam* action based upon personal knowledge, review of relevant documents, their investigations, and information and belief, on behalf of the United States of America and the States pursuant to the FCA and State equivalents. Relator seeks to recover treble damages sustained by, and civil penalties and restitution owed to, the United States Government and the States.

## II.      JURISDICTION AND VENUE

8.      This court has jurisdiction over the claims Relator brings on behalf of the United States under the FCA pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3732, which confers jurisdiction on this court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

9.      This court also has jurisdiction over the claims Relator brings on behalf of the States under each state's false claims act pursuant to 31 U.S.C § 3732(b) because these claims arise from the same transaction or occurrence as the claims brought under 31 U.S.C. § 3730.

10.      This Court may exercise personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because at least one Defendant can be found or transacts business in this District,

---

[2] References to purchases by each of the States throughout this complaint also include purchases by all state agencies and/or political subdivisions of the state and any other entities encompassed under each State's statute.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or an act proscribed by 31 U.S.C. § 3730 occurred in this District. This Court may also exercise personal jurisdiction over the Defendants because they do business in the Western District of Washington and have sufficient minimum contacts with this District. Defendants intentionally avail themselves of the markets in this state through the promotion, marketing, and sale of the products at issue in this lawsuit to render the exercise of jurisdiction by this Court permissible under Washington law and the U.S. Constitution. *See infra*, at section V(F)(3)(p).

11.     Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this District and submitted or caused to be submitted false claims in this District and because violations of 31 U.S.C. § 3729 occurred in this district.

12.     A civil action for violations of the False Claims Act may be brought by private persons on behalf of the United States Government under the *qui tam* provisions of 31 U.S.C. § 3730(b). Similar provisions exist for each of the States.[3]

13.     Relator is the original source of the information and facts upon which the allegations of this Complaint are based. Relator has direct independent knowledge of the information and facts contained in this Complaint based upon his own investigation and analyses as well as an investigation undertaken on his behalf through his Counsel.

14.     To the best of Relator's knowledge, there has been no prior public disclosure of the allegations contained in this Complaint. There are no known published studies, reports, or articles that have previously identified the scheme identified in this Complaint. Relator performed independent research and analyses to confirm, to the best of his ability, the false claims that he identifies in this Complaint.

15.     Further, Relator's Complaint is not based upon the public disclosure of allegations or transactions in any criminal, civil, or administrative hearing, or any congressional, Government

---

[3] Cal. Gov't Code § 12652(c) (California); Del. Code Ann. tit. 6, § 1203(b) (Delaware); D.C. Code § 2-381.03(b) (District of Columbia); Fla. Stat. § 68.083(2) (Florida); 740 Ill. Comp. Stat. 175/4(b) (Illinois); Iowa Code § 685.3(2) (Iowa); Md. Code Ann., Gen. Provis. § 8-104(a) (Maryland); Mass. Gen. Laws ch. 12, § 5C(2) (Massachusetts); Minn. Stat. § 15C.05(a) (Minnesota); Mont. Code Ann. § 17-8-406(1) (Montana); N.J. Stat. Ann. § 2A:32C-5(b) (New Jersey); N.M. Stat. Ann. § 44-9-5(A) (New Mexico); N.Y. State Fin. Law § 190(2) (New York); 9 R.I. Gen. Laws § 9-1.1-4(b) (Rhode Island); Va. Code Ann. § 8.01-216.5(A) (Virginia).

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Accountability Office or other Federal report, hearing, audit, or investigation, or from the news

2    media.

3        16.      To the extent that there has been any public disclosure unknown to Relator, he is

4    an original source under 31 U.S.C. § 3730(e)(4)(B) and equivalent State statutes.

5                                  **III.     PARTIES**

6    **A.     Plaintiffs**

7        17.      The following are the real parties in interest:

8        A.      The United States, including, but not limited to, the Department of Justice, the

9    General Services Administration, the Department of Defense, the Treasury Department, the

10    Department of Homeland Security, and other federal agencies or divisions who purchased, or

11    provided funds for the purchase of, accessory panels designed for ballistic protection manufactured

12    or sold by FirstSpear, LLC, Point Blank Enterprises, Inc., Central Lake Armor Express, Inc., KDH

13    Defense Systems, Inc., or Safariland, LLC (from brands including American Body Armor, GH

14    Armor Systems, Second Chance Body Armor, and Protech Tactical); and

15        B.      The State of California, the State of Delaware, the District of Columbia, the State

16    of Florida, the State of Illinois, the State of Iowa, the State of Maryland, the Commonwealth of

17    Massachusetts, the State of Minnesota, the State of Montana, the State of New Jersey, the State of

18    New Mexico, the State of New York, the State of Rhode Island, and the Commonwealth of

19    Virginia, including, but not limited to all agencies, divisions or political subdivisions of these

20    States who purchased, or provided funds for the purchase of, accessory panels designed for

21    ballistic protection manufactured or sold by FirstSpear, LLC, Point Blank Enterprises, Inc., Central

22    Lake Armor Express, Inc., KDH Defense Systems, Inc., or Safariland, LLC (from brands including

23    American Body Armor, GH Armor Systems, Second Chance Body Armor, and Protech Tactical).

24

25

26

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.      Relator**

18.      Relator Robert G. Lee is the Owner, President, and Chief Executive Officer of Accushape Inc. ("Accushape") and a resident of Portland, Oregon. Accushape is a body armor manufacturer based in Portland, Oregon, with a manufacturing plant in Albany, Oregon.

**C.      Defendants**

**1.      FirstSpear, LLC**

19.      Defendant FirstSpear, LLC ("FirstSpear") is a corporation with offices located at 2019 Corporate 44 Drive, Fenton, Missouri 63026.

20.      FirstSpear manufactures tactical equipment that it sells directly to customers and equipment it manufactures for companies in the defense industry and beyond. FirstSpear offers a variety of tactical gear including vests and accessories. FirstSpear's vest system product lines include: Strandhögg, Siege-R, Aegir-38, Assaulter Armor Carrier, Ragnar, and M.A.S.S. Modular Armor Supplement System.

21.      FirstSpear has also collaborated with Point Blank Enterprises, Inc., to sell products manufactured by Point Blank as shown *infra* at ¶ 117, and also with Defendant Safariland, LLC.

22.      FirstSpear has sold body armor to the federal government.  FirstSpear has stated that it sells its M.A.S.S. Modular Armor Supplement System product, a set of accessory panels, "everyday to police and military units."

**2.      Point Blank Enterprises, Inc.**

23.      Defendant Point Blank Enterprises, Inc. ("Point Blank") is a corporation with offices located at 2102 Southwest 2nd Street, Pompano Beach, Florida 33069.

24.      According to their website, Point Blank "is the worldwide leader in the development, manufacturing and distribution of high performance, protective solutions for the U.S. Military and U.S. Department of Defense, Federal Agencies, domestic and international law enforcement, and corrections professionals."

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

25.     Point Blank also claims to be "the industry's leading innovator of advanced products and designs engineered to maximize ballistic protection." The company advertises that it has "shipped millions of body armor solutions to America's service men and women, law enforcement professionals, corrections officers, Federal agents, and other key national and international customers."

26.     The company offers products including body armor vests and accessory panels under the brand names Point Blank Body Armor, PACA, PARACLETE, and others.

**3.     Central Lake Armor Express, Inc.**

27.     Defendant Central Lake Armor Express, Inc. ("Armor Express") is a corporation with offices located at 4501 N. Fairfax Drive, Suite 720, Arlington, Virginia 22203.

28.     Armor Express, founded in 2005, is a designer, manufacturer and supplier of "protective solutions" with sales both to the domestic law enforcement market as well as the U.S. military, federal law enforcement, first responders and corrections professionals globally. Their products include body armor vests and accessory panels.

29.     On their website, Armor Express claims that "Safety is our Priority – We will always ensure that every product we source or produce has the highest quality and safety controls – we are saving lives." The company also advertises that it "will always make ethical decisions," "be transparent with our customers and colleagues," and "always hold ourselves and our colleagues accountable for actions and results."

**4.     KDH Defense Systems, Inc.**

30.     Defendant KDH Defense Systems, Inc. ("KDH Defense Systems" or "KDH") is a corporation with offices located at 750A Fieldcrest Road, Eden, North Carolina 27288.

31.     KDH Defense Systems is a producer and manufacturer of body armor for the U.S. Department of Defense, U.S. Armed Forces, and federal government and law enforcement agencies. Their products include body armor vests and accessory panels.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32.     KDH claims to have "consistently delivered innovative, high-quality products" to agencies including the U.S. Armed Forces and the United States Department of Homeland Security.

33.     Armor Express and KDH Defense Systems are both owned by the holding company, Praesidium. The Chief Executive Officer of both companies is James R. Henderson. Praesidium is owned by SBJ Fund (Spanos Barbers Jesse & Co., LLC).

34.     Armor Express and KDH Defense Systems "are recognized as one of the leading suppliers of protective armor solutions in the world."

**5.     Safariland, LLC**

35.     Defendant Safariland, LLC, d/b/a The Safariland Group ("Safariland"), is a corporation with offices located at 13386 International Pkwy, Jacksonville, Florida 32218.

36.     The Safariland Group is a manufacturer of equipment focused on the law enforcement, public safety, military, and recreational markets and includes 19 brands that serve these markets.

37.     The Safariland Group offers body armor under brand names including American Body Armor ("ABA"), GH Armor Systems ("GH Armor"), Second Chance Body Armor, and Protech Tactical. These products include body armor vests and accessory panels.

38.     Safariland advertises that its brands are "recognized and well-respected brands known for their innovation and quality." The company purports to be "committed to focusing on the customer first in all we do. Our mission, Together, We Save Lives . . . is a creed we live by." Safariland claims that its body armor is "[e]ngineered and designed to maximize both ballistic performance and human performance" and that "[e]very piece in this line has been re-invented and purpose-built for unprecedented protection, comfort and modularity."

## IV.     STATUTORY BACKGROUND

**A.     The Federal False Claims Act**

39.     The FCA establishes that any person who:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

. . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. [§] 2461 . . .), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

40.     Under the FCA, the terms "knowing" and "knowingly" mean "that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A). These terms "require no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B).[4]

41.     The term "claim" under the FCA:

(A)  means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

(i)  is presented to an officer, employee, or agent of the United States; or
(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--
(I) provides or has provided any portion of the money or property requested or demanded; or
(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. . . .

*Id.* § 3729(b)(2).

---

[4] Each State defines "knowingly" similarly. *See* Cal. Gov't Code § 12650(B)(3); Del. Code Ann. tit. 6, § 1202(3); Fla. Stat. § 68.082(1)(c); 740 Ill. Comp. Stat. 175/3(b)(1); Iowa Code § 685.1(7); Md. Code Ann., Gen. Provis. § 8-101(f); Mass. Gen. Laws ch. 12, § 5A; Minn. Stat. § 15C.01(3); Mont. Code Ann. § 17-8-402(4); N.J. Stat. Ann. § 2A:32C-2; N.M. Stat. Ann. § 44-9-2(C); N.Y. State Fin. Law § 188(3); 9 R.I. Gen. Laws § 9-1.1-3(b)(2); Va. Code Ann. § 8.01-216.3(C).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.     State False Claims Acts**

      **6.     California False Claims Act**

42.     A person violates the California False Claims Act ("CFCA") by committing certain enumerated acts, including if the person:

> (1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval[;]
>
> (2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim[; or]
>
> . . .
>
> (8) Is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

Cal. Gov't Code § 12651(a).

43.     Anyone who violates this statute is "liable to the state or to the political subdivision for three times the amount of damages that the state or political subdivision sustains because of the act of that person," as well as for costs of the civil action and "for a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) for each violation, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." *Id.*

44.     Under the CFCA:

> (1) "Claim" means any request or demand, whether under a contract or otherwise, for money, property, or services, and whether or not the state or a political subdivision has title to the money, property, or services that meets either of the following conditions:
>     (A) Is presented to an officer, employee, or agent of the state or of a political subdivision.
>     (B) Is made to a contractor, grantee, or other recipient, if the money, property, or service is to be spent or used on a state or any political subdivision's behalf or to advance a state or political subdivision's program or interest, and if the state or political subdivision meets either of the following conditions

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Cal. Gov't Code § 12650(b)

**7.     Delaware False Claims and Reporting Act**

45.     Pursuant to the Delaware False Claims and Reporting Act ("DFCRA"), any person who:

> (1) Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; [or]
>
> (2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;
>
> . . .
>
> shall be liable to the Government for a civil penalty of not less than $10,957 and not more than $21,916, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 2015 (28 U.S.C. § 2461), for each act constituting a violation of this section, plus 3 times the amount of damages which the Government sustains because of the act of that person.

Del. Code Ann. tit. 6, § 1201(a).

46.     Under the DFCRA:

> (1) "Claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the Government has title to the money or property, that:
>> a. Is presented to an officer, employee, or agent of the Government; or
>> b. Is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the Government:
>>> 1. Provides or has provided any portion of the money or property requested or demanded; or
>>> 2. Will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.
>
> . . .
>
> (2) "Government" includes all departments, boards or commissions of the executive branch of the State, all political subdivisions of the State, the Delaware Department of Transportation and all state and municipal authorities, all organizations created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function, and all organizations, entities or persons receiving funds of

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the State where the act complained of pursuant to this chapter relates to the use of such funds of the State.

Del. Code Ann. tit. 6, § 1202.

**8.** **District of Columbia False Claims Act**

47. A person violates the District of Columbia False Claims Act ("DCFCA") by committing certain enumerated acts, including if the person:

> (1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> . . .
>
> (8) Is a beneficiary of an inadvertent submission of a false or fraudulent claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false or fraudulent claim to the District.

D.C. Code § 2-381.02(a).

48. Any person who violates this statute is "liable to the District for 3 times the amount of damages which the District sustains because of the act of that person" as well as the costs of a civil action and "for a civil penalty of not less than $5,500, and not more than $11,000, for each false or fraudulent claim." *Id.*

49. Under the DCFCA, "claim" means:

> (A) Any request or demand, whether under a contract or otherwise, for money or property, and whether or not the District has title to the money or property, that:
> > (i) Is presented to an officer, employee, or agent of the District; or
> > (ii) Is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the District's behalf or to advance a District program or interest, and if the District:
> > > (I) Provides or has provided any portion of the money or property requested or demanded; or
> > > (II) Will reimburse the contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

D.C. Code Ann. § 2-381.01(1).

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**9.      Florida False Claims Act**

50.       Pursuant to the Florida False Claims Act ("FFCA"), any person who:

(a) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; [or]

(b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

. . .

is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the state sustains because of the act of that person.

Fla. Stat. § 68.082(2).

51.       Under the FFCA:

(a) "Claim" means any request or demand, whether under a contract or otherwise, for money or property, regardless of whether the state has title to the money or property, that:

   1. Is presented to any employee, officer, or agent of the state; or
   2. Is made to a contractor, grantee, or other recipient if the state provides or has provided any portion of the money or property requested or demanded, or if the state will reimburse the contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded.

      . . .

(f) "State" means the government of the state or any department, division, bureau, commission, regional planning agency, board, district, authority, agency, or other instrumentality of the state.

Fla. Stat. § 68.082(1).

**10.      Illinois False Claims Act**

52.       Pursuant to the Illinois False Claims Act ("Illinois FCA"), any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

. . .

is liable to the State for a civil penalty of not less than the minimum amount and not more than the maximum amount allowed for a civil penalty for a violation of the federal False Claims Act . . . as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . , plus 3 times the amount of damages which the State sustains because of the act of that person.

740 Ill. Comp. Stat. 175/3(a)(1).

53.     Under the Illinois FCA, the term "claim":

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the State has title to the money or property, that

(i) is presented to an officer, employee, or agent of the State; or
(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the State's behalf or to advance a State program or interest, and if the State:

(I) provides or has provided any portion of the money or property requested or demanded; or
(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. . . .

*Id.* at 175/3(b)(2).

54.     In addition:

a) "State" means the State of Illinois; any agency of State government; the system of State colleges and universities, any school district, community college district, county, municipality, municipal corporation, unit of local government, and any combination of the above under an intergovernmental agreement that includes provisions for a governing body of the agency created by the agreement.

740 Ill. Comp. Stat. 175/2(a).

**11.  Iowa False Claims Act**

55.     A person violates the Iowa False Claims Act ("Iowa FCA") by committing certain enumerated acts, including if the person:

a. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [; or]

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

Iowa Code § 685.2(1).

56.     Anyone who violates this statute "is liable to the state for a civil penalty of not less than and not more than the civil penalty allowed under the federal False Claims Act. . . [adjusted for inflation] . . . for each false or fraudulent claim, plus three times the amount of damages which the state sustains." *Id.*

57.     Under the Iowa FCA:

1. "Claim" means any request or demand, whether pursuant to a contract or otherwise, for money or property and whether the state has title to the money or property, which is presented to an officer, employee, agent, or other representative of the state or to a contractor, grantee, or other person if the money or property is to be spent or used on the state's behalf or to advance a state program or interest, and if the state provides any portion of the money or property which is requested or demanded, or if the state will reimburse directly or indirectly such contractor, grantee, or other person for any portion of the money or property which is requested or demanded. . .

. . .

15. "State" means the state of Iowa.

Iowa Code § 685.1.

**12.     Maryland False Claims Act**

58.     Pursuant to the Maryland False Claims Act ("Maryland FCA"), it is prohibited to:

(1) knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

(2) knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim; [or]

. . .

(9) knowingly make any other false or fraudulent claim against a governmental entity.

Md. Code Ann., Gen. Provis. §  8-102(b).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

59.     Anyone who violates this statute is liable to the government entity for "(i) a civil penalty of not more than $10,000 for each violation; and (ii) an additional amount of not more than three times the amount of damages that the governmental entity sustains as a result of the acts of that person in violation of subsection (b) of this section." *Id.* at § 8-102(c)(1).

60.     Under the Maryland FCA:

(1) "Claim" means a request or demand, under a contract or otherwise, for money or other property, whether or not the governmental entity has title to the money or property, that is:
    (i) presented to an officer, employee, or agent of a governmental entity; or
    (ii) made to a contractor, a grantee, or another recipient, if the money or other property is to be spent or used on a governmental entity's behalf or to advance an interest of a governmental entity, and the governmental entity:
        1. provides or has provided any portion of the money or other property requested or demanded; or
        2. will reimburse the contractor, grantee, or other recipient for any portion of the money or other property that is requested or demanded.

. . .

(e) "Governmental entity" means:
    (1) the State;
    (2) a county; or
    (3) a municipal corporation.

Md. Code Ann., Gen. Provis. § 8-101.

**13.     Massachusetts False Claims Act**

61.     Pursuant to the Massachusetts False Claims Act ("Massachusetts FCA"), any person who:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim;

. . .

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(8) enters into an agreement, contract or understanding with an official of the commonwealth or a political subdivision thereof knowing the information contained therein is false; [or]

. . .

(10) is a beneficiary of an inadvertent submission of a false claim to the commonwealth or a political subdivision thereof, or is a beneficiary of an overpayment from the commonwealth or a political subdivision thereof, and who subsequently discovers the falsity of the claim or the receipt of overpayment and fails to disclose the false claim or receipt of overpayment to the commonwealth or a political subdivision by the later of: (i) the date which is 60 days after the date on which the false claim or receipt of overpayment was identified; or (ii) the date any corresponding cost report is due, if applicable,

shall be liable to the commonwealth or political subdivision for a civil penalty of not less than $5,500 and not more than $11,000 per violation, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus 3 times the amount of damages, including consequential damages, that the commonwealth or a political subdivision thereof sustains because of such violation.

Mass. Gen. Laws ch. 12, § 5B(a).

62.     Under the Massachusetts FCA, "claim" means:

a request or demand, whether pursuant to a contract or otherwise, for money or property, whether or not the commonwealth or a political subdivision thereof has title to the money or property, that: (1) is presented to an officer, employee, agent or other representative of the commonwealth or a political subdivision thereof; or (2) is made to a contractor, subcontractor, grantee or other person, if the money or property is to be spent or used on behalf of or to advance a program or interest of the commonwealth or political subdivision thereof and if the commonwealth or any political subdivision thereof: (i) provides or has provided any portion of the money or property which is requested or demanded; or (ii) will reimburse directly or indirectly such contractor, subcontractor, grantee or other person for any portion of the money or property which is requested or demanded.

Mass. Gen. Laws ch. 12, § 5A.

### 14.   Minnesota False Claims Act

63.     A person violates the Minnesota False Claims Act ("Minnesota FCA") by committing certain enumerated acts, including if the person:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(2) knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]

Minn. Stat. § 15C.02(a).

64.     Anyone who violates this statute "is liable to the state or political subdivision for a civil penalty in the amounts set forth in the federal False Claims Act . . . [adjusted for inflation] . . ., plus three times the amount of damages that the state or the political subdivision sustains." *Id.*

65.     Under the Minnesota FCA:

"Claim" includes a request or demand, whether under a contract or otherwise, for money or property and whether or not the state or a political subdivision has title to the money or property, that:
(1) is presented to an officer, employee, or agent of the state or a political subdivision; or
(2) is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on behalf of the state or the political subdivision or to advance the state's or political subdivision's program or interest, and if the state or political subdivision provides or has provided a portion of the money or property that is requested or demanded, or if the state or the political subdivision has reimbursed or will reimburse the contractor, grantee, or other recipient for a portion of the money or property that is requested or demanded.

. . .

"Political subdivision" means a political subdivision of the state and includes a department or agency of a political subdivision.

. . .

"State" means the state of Minnesota and includes a department or agency of the state.

Minn. Stat. § 15C.01.

**15.     Montana False Claims Act**

66.     A person violates the Montana False Claims Act ("Montana FCA") by committing certain enumerated acts, including if the person:

(a) knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 18

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(b) knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; [or]

. . .

(h) as a beneficiary of an inadvertent submission of a false or fraudulent claim to the governmental entity, subsequently discovers the falsity of the claim or that the claim is fraudulent and fails to disclose the false or fraudulent claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim.

Mont. Code Ann. § 17-8-403(1).

67.    Anyone who violates this statute "is liable to a governmental entity for a civil penalty of not less than $5,500 and not more than $11,000 for each act specified in this section, plus three times the amount of damages that a governmental entity sustains, along with expenses, costs, and attorney fees." *Id.*

68.    Under the Montana FCA:

(1) "Claim" includes any request or demand for money, property, or services, whether made pursuant to a contract and regardless of whether a governmental entity holds title to the money or property, that is made to:
   (a) an employee, officer, agent, or other representative of a governmental entity; or
   (b) a contractor, grantee, or other person, whether under contract or not, if any portion of the money, property, or services requested or demanded is to be spent or used on a governmental entity's behalf or to advance a governmental program or interest and if the governmental entity:
      (i) provides or has provided any portion of the money, property, or services requested or demanded; or
      (ii) will reimburse a contractor, grantee, or other person for any portion of the money, property, or services requested or demanded.

. . .

(3) "Governmental entity" means:
   (a) the state;
   (b) a city, town, county, school district, tax or assessment district, or other political subdivision of the state; or
   (c) a unit of the Montana university system.

Mont. Code Ann. § 17-8-402.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 19

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**16.     New Jersey False Claims Act**

69.     A person violates the New Jersey False Claims Act ("NJFCA") by committing certain enumerated acts, including if the person:

> a. Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval; [or]
>
> b. Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State[.]

N.J. Stat. Ann. § 2A:32C-3.

70.     Anyone who violates this statute "shall be jointly and severally liable to the State for a civil penalty of not less than and not more than the civil penalty allowed under the federal False Claims Act . . . as may be adjusted in accordance with the inflation adjustment procedures prescribed in the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . for each false or fraudulent claim, plus three times the amount of damages which the State sustains." *Id.*

71.     Under the NJFCA,

> "Claim" means a request or demand, under a contract or otherwise, for money, property, or services that is made to any employee, officer, or agent of the State, or to any contractor, grantee, or other recipient if the State provides any portion of the money, property, or services requested or demanded, or if the State will reimburse the contractor, grantee, or other recipient for any portion of the money, property, or services requested or demanded.
>
> . . .
>
> "State" means any of the principal departments in the Executive Branch of State government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; and any independent State authority, commission, instrumentality or agency.

N.J. Stat. Ann. § 2A:32C-2.

**17.     New Mexico Fraud Against Taxpayers Act**

72.     Pursuant to the New Mexico Fraud Against Taxpayers Act ("NMFATA"), a person shall not:

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(1) knowingly present, or cause to be presented, to an employee, officer or agent of the state or a political subdivision or to a contractor, grantee or other recipient of state or political subdivision funds a false or fraudulent claim for payment or approval;

(2) knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim; [or]

. . .

(9) as a beneficiary of an inadvertent submission of a false claim and having subsequently discovered the falsity of the claim, fail to disclose the false claim to the state or political subdivision within a reasonable time after discovery.

N.M. Stat. Ann. § 44-9-3(A).

73.      A person who violates this statue is liable for "(1) three times the amount of damages sustained by the state or political subdivision because of the violation; (2) a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) for each violation; (3) the costs of a civil action brought to recover damages or penalties; and (4) reasonable attorney fees, including the fees of the attorney general, state agency or political subdivision counsel." *Id.* at § 44-9-3(C).

74.      Under the NMFATA,

A. "claim" means a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state or a political subdivision;

. . .

E. "political subdivision" means a political subdivision of the state or a charter school; and

F. "state" means the state of New Mexico or any of its branches, agencies, departments, boards, commissions, officers, institutions or instrumentalities, including the New Mexico finance authority, the New Mexico mortgage finance authority and the New Mexico lottery authority.

N.M. Stat. Ann. § 44-9-2.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 21

**18.     New York False Claims Act**

75.     Pursuant to the New York False Claims Act ("NYFCA"), any person who:

(a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; [or]

(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

. . .

shall be liable to the state or a local government, as applicable, for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, as adjusted to be equal to the civil penalty allowed under the federal False Claims Act, . . . as adjusted for inflation by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person.

N.Y. State Fin. Law § 189(1).

76.     Under the NYFCA:

1. "Claim" (a) means any request or demand, whether under a contract or otherwise, for money or property that
     (i) is presented to an officer, employee or agent of the state or a local government; or
     (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state or a local government's behalf or to advance a state or local government program or interest, and if the state or local government (A) provides or has provided any portion of the money or property requested or demanded; or (B) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . .

. . .

6. "Local government" means any New York county, city, town, village, school district, board of cooperative educational services, local public benefit corporation or other municipal corporation or political subdivision of the state, or of such local government.

. . .

9. "State" means the state of New York and any state department, board, bureau, division, commission, committee, public benefit corporation, public authority,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

council, office or other governmental entity performing a governmental or proprietary function for the state.

N.Y. State Fin. Law § 188.

**19.    Rhode Island False Claims Act**

77.    Pursuant to the Rhode Island False Claims Act ("RIFCA"), any person who:

(1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

. . .

is liable to the state for a civil penalty in an amount equal to the civil penalty set forth in the Federal False Claims Act, following the Federal Civil Penalties Inflation Agreement Act of 1990 . . . as amended and annually adjusted by the Federal Civil Penalties Inflation Adjustment Improvements Act of 2015, plus three (3) times the amount of damages the state sustains because of the act of that person.

9 R.I. Gen. Laws § 9-1.1-3(a).

78.    Under the RIFCA:

"Claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the state has title to the money or property, that:
    (i) Is presented to an officer, employee, or agent of the state; or
    (ii) Is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state's behalf or advance a state program or interest, and if the state:
        (A) Provides or has provided any portion of the money or property requested or demanded; or
        (B) Will reimburse the contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded....

*Id.* at § 9-1.1-3(b)(1).

79.    In addition:

"State" means the state of Rhode Island; any agency of state government; and any political subdivision meaning any city, town, county or other governmental entity authorized or created by state law, including public corporations and authorities.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

9 R.I. Gen. Laws § 9-1.1-2(8).

**20.  Virginia Fraud Against Taxpayers Act**

80.      Pursuant to the Virginia Fraud Against Taxpayers Act ("VFATA"), any person who:

> 1. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . .
>
> shall be liable to the Commonwealth for a civil penalty of not less than $10,957 and not more than $21,916, except that these lower and upper limits on liability shall automatically be adjusted to equal the amounts allowed under the Federal False Claims Act . . . as such penalties in the Federal False Claims Act are adjusted for inflation by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages sustained by the Commonwealth.

Va. Code Ann. § 8.01-216.3(A).

81.      Under the VFATA:

> "Claim" means any request or demand, whether under a contract or otherwise, for money or property, regardless of whether the Commonwealth has title to the money or property, that (i) is presented to an officer, employee, or agent of the Commonwealth or (ii) is made to a contractor, grantee, or other recipient (a) if the money or property is to be spent or used on the Commonwealth's behalf or to advance a governmental program or interest and (b) if the Commonwealth provides or has provided any portion of the money or property requested or demanded or will reimburse such contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded. . . .
>
> . . .
>
> "Commonwealth" means the Commonwealth of Virginia, any agency of state government, and any political subdivision of the Commonwealth.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Va. Code Ann. § 8.01-216.2.

## V.      ALLEGATIONS OF FACT

**A.      Body Armor and Accessory Panels are Important Safety Equipment.**

82.      The effectiveness of body armor is of paramount importance to law enforcement officers because serious injury and/or death can result if it fails.

83.      The FBI's Law Enforcement Officers Killed & Assaulted ("LEOKA") database shows that dozens of officers are killed with firearms while wearing body armor annually. In 2018, 40 officers were killed with firearms while wearing body armor. While this database does not specify whether law enforcement officers were wearing accessory panels, the LEOKA data reveals that between 2009 and 2018, 11.5% of officers that were killed while wearing body armor were killed by being shot in the neck or throat.

84.      The term "body armor" is typically associated with "vests" designed to provide full torso coverage. What is commonly thought of as a "vest" is two ballistic panels held in place by a carrier. One panel protects the front of the torso and the other protects the rear. The carrier is not intended to provide ballistic protection. Instead, the carrier's purpose is to hold the ballistic panels in place and secure them to the officer's body.

***

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

85.     The term "body armor" can also refer to smaller armor panels called accessory panels. Accessory panels are intended to provide protection to the neck, throat, collar, biceps, deltoids, shoulders, groin, or coccyx. This case is about these accessory panels.





Image 1: Vest only

Image 2: Vest with accessory panels for the neck, biceps, and groin.

86.     Accessory panels are typically sold in combination with vests or carriers as add-on products that can be attached to the carrier or vest. They range in price from approximately $50 to $600 for a panel or set of panels. They may also be sold as part of a "complete set," which includes both a vest and accessory panels.

87.     Law enforcement officers who are performing regular duties often wear body armor without accessory panels. Accessory panels are usually worn by law enforcement officers engaging in particularly hazardous duties, such as SWAT operations.

**B.     Pursuant to Mandate, NIJ Runs a Body Armor Standard and Testing Program.**

88.     To provide standards for law enforcement agencies to rely on when purchasing body armor to protect their officers, the National Institute of Justice ("NIJ"), an agency of the U.S. Department of Justice, runs a voluntary standards and testing program. The Office of Law

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Enforcement Standards ("OLES") develops voluntary national performance standards for compliance testing to ensure that individual items of equipment are suitable for use by law enforcement agencies. The National Law Enforcement and Correction Technology Center ("NLECTC") coordinates the national compliance testing program that is conducted by NIJ-approved independent laboratories.

89.     The Standards and Testing Program responds to a mandate of the Homeland Security Act of 2002, "[t]o establish and maintain a program to certify, validate, and mark or otherwise recognize law enforcement technology products that conform to standards established and maintained by the Office in accordance with the National Technology Transfer and Advancement Act of 1995 (Public Law 104-113)...." 6 U.S.C. § 162 (b)(4).

90.     The most recent NIJ Ballistic Resistance Standard, NIJ Standard-0101.06, establishes minimum performance requirements that body armor must meet to be suitable for law enforcement use. It provides requirements and test methods to ensure that the armor will resist penetration from bullets and is rated to defeat and minimize injury from blunt force trauma from a nonpenetrating bullet. Although adherence to the NIJ Standard-0101.06 is voluntary—that is manufacturers are not required to follow it—many public safety agencies require compliance with NIJ Standard-0101.06 before they purchase equipment. Most U.S. and State law enforcement agencies use the NIJ program to select and procure body armor that is compliant with the NIJ standard.

91.     To satisfy NIJ's Ballistic Resistance Standard, body armor must be able to stop a bullet from passing through the armor and minimize injuries caused by blunt force trauma.

92.     NIJ administers a program to test commercially available armor for compliance with the standard to determine whether the products will perform as expected. NIJ approves and certifies several independent laboratories to perform the required tests.

93.     To get body armor certified pursuant to NIJ Standard-0101.06, a manufacturer must enter into a Compliance Testing Program ("CTP") agreement with NIJ. The manufacturer first

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 27

prepares a detailed description of the product design including how it is constructed, all the materials it is made from, and the period of ballistic warranty. If NIJ approves the design, the manufacturer then submits the required number of test samples to an NIJ-approved independent testing lab where testing is performed pursuant to NIJ Standard-0101.06. If the tests are successful, the test lab prepares a report and sends the tested product to NIJ for retention and comparison with later audit test samples of the product. NIJ must also approve the product's label, and each manufacturer's quality control manual or practices pursuant to guidance in the CTP agreement. Following approval of the product and its label, NIJ adds the product to the Compliant Product List ("CPL"). NIJ publishes the Ballistic Armor Compliant Product List of all models that comply with NIJ Standard-0101.06 online at https://www.justnet.org/compliant/ ballistic_cpl.html. This allows governments and law enforcement agencies to determine which models are certified to meet the requirements of NIJ Standard-0101.06 and the NIJ Compliance Testing Program.

94.     The testing does not stop after certification. Body armor manufacturers with models that have previously satisfied NIJ Standard-0101.06 are subject to follow-up inspections and testing to ensure the armor continues to meet NIJ standards, and must comply with these inspections and testing in order for the product to remain on the CPL.

**C.     NIJ Standard-0101.06 Establishes Minimum Performance Requirements for Ballistic Resistance of Body Armor.**

95.     In 2008, NIJ published the current version of the Ballistic Resistance Standard, NIJ Standard-0101.06, attached hereto as **Exhibit 1**.[5]

96.     NIJ Standard-0101.06 requires two types of tests, among other considerations, to determine if a particular model of body armor is suitable to protect law enforcement from gunfire: (1) Perforation and Backface Signature Test ("P-BFS"); and (2) Ballistic Limit ("BL") Determination Test.[6]

---

[5] *Ballistic Resistance of Body Armor - NIJ Standard-0101.06*, Nat'l Inst. of Just. (July 2008), https://www.ncjrs.gov/pdffiles1/nij/223054.pdf.
[6] *Id.* at 43, 50.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 28

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

97.     The test relevant to this case is the P-BFS test. To conduct the test, the armor panels are shot multiple times at specified ranges and angles. Then, the armor is examined to determine whether it passed the test. The P-BFS test has two components: Perforation refers to an instance where a bullet passes through armor, while Backface Signature refers to the indentation made by bullets in the clay material behind the body armor panel when a bullet hits the panel.[7] The depth of this indentation is used to gauge the level of blunt force trauma a person wearing the body armor panel will sustain. The two components of the P-BFS test are designed to determine whether the armor will stop bullets and whether the armor will minimize injuries caused by blunt force trauma.

98.     NIJ has set a Backface Signature limit of 44 mm (1.73 inch).[8] This means that any indentation in the clay material behind the tested armor panel must be less than 44 mm deep. This limit was derived from NIJ-funded research conducted by U.S. Army researchers that investigated how much blunt force trauma the body could sustain before serious, and sometimes fatal, injuries could result. For example, if a law enforcement officer is shot in the back near his or her spine, blunt force trauma could sever the spinal cord even if the vest stops the bullet from entering the body. The Backface Signature limit is intended to ensure certified body armor protects against these types of injuries.

99.     The other test, Ballistic Limit ("BL"), measures the velocity at which there is an equal chance of an armor stopping a given bullet or of being perforated.[9] According to NIJ, it is not practical to perform BL tests on accessory panels given their small size. The test method that is used to determine BL is typically known as the "V50" test method.[10] BL test data are used to develop a profile of the probability of an armor being perforated over a range of velocities. Appendix E of NIJ Standard-0101.06 provides a detailed explanation of BL data and its meaning.

---

[7] *Id.* at 5-6, 9.
[8] *Id.* at 49.
[9] *Id.* at 6.
[10] *Id.*

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

100.     The degree to which a firearm poses a threat to someone wearing body armor depends in large measure on the nature of ammunition the weapon fires, including the velocity of the bullet and other design characteristics. Therefore, body armor is classified into five levels of ballistic protection that are defined based on the bullet "threat level" the armor is tested against. The first three NIJ threat levels—IIA, II and IIIA—are typically soft armors designed to protect officers against handgun bullets. The two remaining NIJ levels, III and IV, are typically hard armor plates designed to protect officers from rifle bullets.

101.     Level IIIA protection is designed to protect law enforcement officers from handgun bullets up to and including .357 SIG Full Metal Jacket Flat Nose (".357 SIG FMJ FN") bullets and .44 Magnum Semi-Jacketed Hollow Point (".44 Magnum SJHP") bullets.[11]

102.     The accessory panels tested by Relator claimed to offer NIJ threat level IIIA protection.

103.     NIJ Standard-0101.06 also provides requirements regarding the size of the test samples. The Compliance Testing Program requires the manufacturer to designate and test the smallest NIJ approved size of ballistics panels. The smallest NIJ approved size of vest, C-1, has a minimum area of 102 square inches.[12] That means the smallest size panel that a manufacturer can certify and claim NIJ Standard-0101.06 compliance for is 102 square inches. Accessory panels however, are much smaller. The largest accessory panels are typically groin panels, which measure approximately 80 square inches. Some neck and throat panels are as small as 25 square inches. Despite the fact that all of the accessory panels tested in this case were significantly smaller than

---

[11] The threat levels and their associated levels of protection are as follows: NIJ threat level IIA is tested against 9mm and .40 Smith & Wesson ammunition fired from short barrel handguns. NIJ threat level II is tested against 9mm and .357 Magnum ammunition fired from short barrel handguns. NIJ threat level IIIA is tested against .357 SIG and .44 Magnum ammunition fired from longer barrel handguns. NIJ threat level III is tested against 7.62mm Full Metal Jacket lead core ammunition fired from rifles. Finally, NIJ threat level IV is tested against .30cal steel core armor piercing rounds fired from rifles. *Understanding NIJ 0101.06 Armor Protection Levels*, Just. Tech. Info. Ctr., https://www.justnet.org/pdf/Understanding-Armor-Protection.pdf (last visited Oct. 24, 2019).

[12] *NIJ Standard-0101.06* at 59, *supra* note 5.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 30

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

102 square inches, the labels on the panels claimed to be compliant with or certified to NIJ Standard-0101.06 and/or threat level IIIA, and also referenced model numbers listed on the CPL.

**1.      NIJ Does Not Certify Accessory Panels to NIJ Standard-0101.06.**

104.      NIJ Standard-0101.06 provides performance requirements and methods for the testing of accessory panels; however, ***NIJ does not certify accessory panels to NIJ-Standard 0101.06 for inclusion on the Compliant Product List ("CPL").*** According to NIJ, manufacturers of accessory panels may have them tested at an NIJ-approved laboratory, but the test results stand on their own. This means that even if an accessory panel was tested at an NIJ-approved laboratory and satisfied the performance requirements and methods for testing set forth in NIJ-Standard 0101.06 for accessory panels, the product may not be marketed nor may it bear labelling indicating that it is Compliance Testing Program or "CTP Compliant," "NIJ Approved," nor may it state "NIJ-Standard-0101.06" or "threat level IIIA." *See infra*, at Section V(C)(2).  The product label also may not claim that the accessory panel is on CPL, including by listing the model of a vest or other product that is on the CPL.

105.      On November 14, 2018, NIJ issued Administrative Clarification CTP 2018:03 to NIJ Standard-0101.06.[13] One of the topics in Administrative Clarification CTP 2018:03 pertained to accessory panels and stated, "Panels that are designed to protect the end user's extremities or to provide additional protection to existing torso worn armor are considered accessories and are outside the scope of the NIJ CTP. *These types of accessories are <u>not</u> authorized to display the NIJ Mark.*"[14]

106.      JTIC has also issued "Additional Information Regarding NIJ Body Armor Compliant Product List for NIJ STD-0101.06," that states under a bold "**Accessory**" heading, "[c]urrently all models listed on the CPL are body armor intended to be worn on the front and back

---

[13] *Minimum Size Requirement for Limited Coverage Armor*, Just. Tech. Info. Ctr. (Nov. 14, 2018), https://www.justnet.org/pdf/NIJ-CTP-Administrative-Clarification-CTP-2018-03-Min-Size-LCA_public.pdf.
[14] *Id.* at 1-2 (emphasis in original).

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 31

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    torso. In the future if the CTP allows testing of accessory panels (e.g., groin, shoulder, coccyx),

2    we will identify those pieces with an 'X' in this box on the CPL."[15]

3        107.      NIJ has not identified any accessory panels as suitable for testing pursuant to the

4    Compliance Testing Program.

5          **2.    Accessory Panel Labels Must Not Claim NIJ Standard-0101.06 Compliance.**

6        108.      Each product listed on the Compliant Product List is required to satisfy NIJ's

7    labelling requirements.[16] For body armor products tested pursuant to NIJ Standard-0101.06 for

8    threat levels II and IIIA, the products must be labeled in English with a label permanently attached

9    to the face of the panel that discloses, among other things, the rated level of protection and

10   reference to the relevant edition of the standard (i.e., Type IIIA in accordance with NIJ Standard-

11   0101.06), the model designation as identified in the NIJ Notice of Compliance, a warning in type

12   at least twice the size of the rest of the type on the label stating that the armor is not intended to

13   protect the wearer from rifle fire, and if applicable, that the armor is not intended to protect the

14   wearer from sharp-edged or pointed instruments.[17] The label is also required to state the Model

15   Designation as named in the NIJ Notice of Compliance, so that a user can check the CPL. NIJ

16   approves these labels on a model by model basis when a product is certified as CTP compliant.

17   The NIJ Body Armor Applicant Package warns manufacturers that "[t]hese labels shall *never* be

18   attached to [ ] any armor designs for which an NIJ Notice of Compliance has not been issued."[18]

19       109.      While there are no specific labeling requirements for accessory panels, there are

20   restrictions on how manufacturers can label these products. In addition to the restrictions discussed

21   above—the fact that manufacturers are not permitted to claim accessory panels are NIJ-Standard

22   0101.06 certified, certified to offer NIJ threat level IIIA protection, or listed on the CPL—all

---

23   [15] *Additional Information Regarding NIJ Body Armor Compliant Product List for NIJ STD-0101.06*, Just. Tech.

24   Info. Ctr., https://www.justnet.org/compliant/additional-information-cpl.html (last visited Oct. 24, 2019).
     [16] *NIJ Standard-0101.06* at 18, *supra* note 5; *see also Body Armor Compliance Testing Program: Body Armor*

25   *Applicant Package*, Just. Tech. Info. Ctr., https://www.justnet.org/pdf/NIJ-BA-CTP-MFG-Applicant-Package-
     rev15-2013-06-17.pdf (last visited Oct. 25, 2019).

26   [17] *See Body Armor Compliance* at 12, *supra* note 16.
     [18] *Id.*

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 32

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

manufacturers when entering into a Compliance Testing Program agreement for their body armor products agree to "not use any model's compliance status in a way that, in the opinion of NIJ: is inconsistent with the scope of the model's compliance status…[b]rings the credibility of NIJ, its agents or designees, or the CTP into question. … [or i]s misleading or inaccurate."[19] Manufacturers also agree to "use compliance status only in the manner for which it was issued and reference only the requirements of the specific standard to which the model was found to be compliant."[20] Finally, the manufacturers agree to "not create or otherwise publish in any form (written, electronic, or via the Internet) any document, advertisement, product literature, or brochure that references NIJ, NLECTC-National, or the CTP in a manner that is not consistent with this agreement."[21]

110.     As described below, Defendants have violated their agreements by falsely marketing and labeling their accessory panels as CTP compliant, NIJ Standard-0101.06 certified, offering NIJ threat level IIIA protection, and/or by referencing the Model Number of a different product that is listed on the CPL. This marketing and labeling was knowingly false within the meaning of the relevant false claims acts.

**D.     Relator Discovers the Defendants' False Claims.**

111.     Relator Lee owns a body armor company called Accushape. In 2012, Accushape purchased the rights to sell a soft body armor system called QCSquared 3-A. QCSquared 3-A had already been tested pursuant to NIJ Standard-0101.06 and was certified and listed on the Compliant Product List:

**Accushape, Inc.**
4344 SW Cheapeake Ave.
Portland, OR 97239-1347
503-977-9348
Fax: 503-977-9351

| Threat Level | Model Designation | Gender | Opening | Size Range (Highlighted Boxes) | | | | Warranty | CPL Comment |
|---|---|---|---|---|---|---|---|---|---|
| IIIA | QCSquared 3-A | Neutral | Side Opening | C2 | C3 | C4 | C5 | 5 Years | |

---

[19] *See Selection & Application Guide 0101.06 to Ballistic-Resistant Body Armor*, NIJ (Dec. 2014), at 69, https://www.ncjrs.gov/pdffiles1/nij/247281.pdf.
[20] *Id.*
[21] *Id.*

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 33

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

112.     In 2013, Mr. Lee began product development in order to sell accessory panels for use by SWAT officers. Accushape manufactured its accessory panels out of the same materials as the larger QC Squared 3-A panels already certified on the CPL and then sent the accessory panels off for testing at an independent NIJ-approved testing facility, Oregon Ballistics Laboratory ("OBL").

113.     The OBL independent test reports established that panels smaller than 10" x 12" (120 square inches) failed the P-BFS (aka Backface Deformation or "BFD") 44 mm requirement for NIJ Level IIIA when shot with even just a single .44 Mag SJHP bullet.[22]

| Accushape Small Panels Test Data | | | | | |
|---|---|---|---|---|---|
| OBL Testing January 21, 2013 | | | | | |
| | | Approximate Size | | .44 Mag | Pass/Fail |
| Test Sample Code | Description | Dimension | Sq. In. | BFD | |
| 130110-01BP | Square | 10 x 12 | 120 | 39.69 | Pass |
| 130110-06G | Groin | 11 x 6 | 66 | 44.38 | Fail |
| 130110-05RX | Knee | 10 x 6 | 60 | 45.05 | Fail |
| 13110-03BP | Very Small | 6 x 8 | 48 | 59.26 | Fail |
| 130110-04XRE | Elbow | 9 x 3 | 27 | 62.51 | Fail[23] |

114.     Because these tests showed that Accushape's accessory panels performed differently on the tests than the full-sized panels and did not provide NIJ Standard-0101.06 level IIIA protection, Mr. Lee was concerned about how to label these accessory panels. Mr. Lee contacted NIJ and was told that his accessory panels could not be labeled as NIJ-approved.

          ***

---

[22] Because some of Accushape's tested panel configurations lacked straight lines, the dimensions and square inches above are approximate.

[23] The report Relator received from OBL incorrectly stated that the elbow piece received a "Pass." However, as the BFD is well beyond the limit of 44 mm, this chart correctly reflects that the elbow piece also failed the testing.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 34

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

115.    As a result, the few accessory panels that Accushape sells clearly inform the user of the lack of NIJ approval and limited level of ballistic protection:



116.    As Accushape continued its product development, Mr. Lee reviewed the advertising by other body armor manufacturers and also purchased accessory panels from other body armor manufacturers to see how they were labeling their accessory panels. As a result, Mr. Lee learned that prominent manufacturers in the industry, including FirstSpear, Point Blank, and Armor Express, were using product labels that stated that accessory panels provided NIJ Standard-0101.06 Level IIIA ballistics protection, or otherwise indicated to the wearer that performance of the panel would be equivalent to that of a model listed on the Compliant Product List. On information and belief, and as described below, government agencies have purchased Defendants' accessory panels believing that they were certified to offer NIJ Standard-0101.06 Level IIIA ballistics protection and were fully compliant with all the regulations accompanying NIJ Standard-0101.06.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 35

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

117.    For example, FirstSpear and Point Blank accessory panel product labels stated that they provided NIJ 0101.06 and NIJ Level IIIA protection to the wearer and they also referenced CPL models.[24]

FirstSpear Deltoid Panel Label:



FirstSpear Collar Panel Label:



---

[24] These photos were taken of products Relator obtained, as described above. The highlighting has been added for emphasis.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 36

FirstSpear/Point Blank[25] Groin Panel Label:



***

---

[25] The label for the Model XP-IIIA FirstSpear MASS Groin accessory panel indicates this panel was sold by FirstSpear but was manufactured by Point Blank.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 37

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

118.     Model numbers 3BFA and XP-IIIA were listed on the CPL for both FirstSpear,

and also Point Blank (including for brands Paraclete and PACA), but only for size ranges C1-C5.

### FirstSpear
2275 Cassens Drive, Suite 135 Fenton , MO 63026
Tel: 636-349-4820 Fax: 636-349-4830
http://www.first-spear.com/

| Threat Level | Model Designation | Gender | Opening | Size Range (Highlighted Boxes) | | | | | Warranty | Model Status |
|---|---|---|---|---|---|---|---|---|---|---|
| IIIA | REN-3BFA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | REN-3XA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | XP-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |

### Point Blank Body Armor
2102 SW 2nd Street Pompano Beach , FL 33069
Tel: 954-630-0900 Fax: 954-334-1705
http://www.pointblankarmor.com/

| Threat Level | Model Designation | Gender | Opening | Size Range (Highlighted Boxes) | | | | | Warranty | Model Status |
|---|---|---|---|---|---|---|---|---|---|---|
| IIIA | XP-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | REN-3BFA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | REN-3XA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |

119.     Armor Express product labels similarly stated that they provided Level IIIA

protection to the wearer, and they also referenced a CPL model.

Armor Express Bicep Panel Label:

MODEL: QTM-B-IIIA          SIZE

DATE OF MFG: 08/0

THREAT LEVEL: IIIA

DECLARED WARRANTY: 5 YEARS.

WEAR FACE - THIS SIDE TO BE WORN AGAINST BODY

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 38

Armor Express Groin Panel Label:



120.    Model number QTM-B-IIIA was listed on the CPL for Armor Express but only for size ranges C1-C5.

**Armor Express, Inc.**
PO Box 516, 7915 Cameron St. Central Lake , MI 49622
Tel: 231-544-6090 Fax: 231-544-6734
http://www.armorexpress.com/

| Threat Level | Model Designation | Gender | Opening | Size Range (Highlighted Boxes) | | | | | Warranty | Model Status |
|---|---|---|---|---|---|---|---|---|---|---|
| IIIA | QTM-B-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | QTM-B-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |

121.    Given the prior independent ballistic lab tests of Accushape's products, Mr. Lee believed that the above product labels were false. The tests of Accushape's own products had indicated that panels of such small size could not provide Level IIIA protection pursuant to NIJ Standard-0101.06. Yet the product labels above implied or directly claimed CPL status and/or performance in compliance with NIJ Standard-0101.06 and the claimed threat level (IIIA), or implied, by reference to threat level IIIA and the CPL model both CPL status and/or performance in compliance with NIJ Standard-0101.06 and threat level IIIA.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 39

122.     Because threat levels are defined in NIJ Standard-0101.06, references to the claimed threat level alone, even without reference to NIJ 0101.06, are false and misleading. Such references in marketing materials and on the product to "threat level IIIA" or "IIIA" indicate that the accessory panel piece would satisfy NIJ-Standard 0101.06 for that particular threat level.

123.     Based on Accushape's product development work and review of other manufacturers' accessory panel labels, Mr. Lee contacted NIJ again to request clarification on how Accushape should label its accessory panels. On October 30, 2015, Mr. Lee provided NIJ with copies of other manufacturers' accessory panel product labels. NIJ advised Accushape that a manufacturer must not use any wording on the label to imply that accessory panels are certified to be equivalent to IIIA and may not use on the label a model name listed on the CPL. NIJ suggested using completely different language on each accessory panel's label to clarify that it was not NIJ-approved. After further discussions, on November 9, 2015, NIJ confirmed that accessory panels could not be certified pursuant to NIJ Standard-0101.06 because they were outside the scope of the Compliance Testing Program.

124.     Mr. Lee also contacted three knowledgeable members of the law enforcement community to ask them what they understood the ballistics protection provided by accessory panels to be. These officers stated they thought accessory panels provided the equivalent NIJ threat level IIIA protection as full-size panels because the accessory panels were so labeled, and they believed the armor manufacturers' representations.

125.     In the Fall of 2015, Accushape again paid for independent testing of accessory panels at the NIJ-approved Oregon Ballistics Laboratory. Three of the panels tested were Accushape's panels, and two were manufactured and sold by other body armor manufacturers. As set forth *supra* at ¶ 117, the label of the FirstSpear MASS COLLAR product claimed that it was compliant to NIJ Standard-0101.06 Level IIIA and also referenced the CPL model name of full-size vests. However, all of the products, including the two sold by FirstSpear, failed the P-BFS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

test and produced results substantially in excess of the 44 mm BFD when hit with a .44 Magnum bullet. This level of blunt force trauma could result in serious injury or a fatality.

**November 25, 2015 OBL Test Results**

| Accessory Panel | Seller & Manufacturer | Model No. | BFD | Penetration | Pass/Fail |
|---|---|---|---|---|---|
| IOTV Throat | Accushape | 15110-02T | 93.65 | Partial | Fail |
| IOTV Neck | Accushape | 151110-01N | 101.82 | Partial | Fail |
| CIRAS Neck | Accushape | 15110-03C | 49.37 | Partial | Fail |
| MASS COLLAR | FirstSpear (made by Renegade) | 3BFA REN | 66.65 | Partial | Fail |
| MASS THROAT | FirstSpear (made by Renegade) | 3BFA REN | 69.05 | Partial | Fail |

126.    On information and belief, Relator's testing indicates that any representation by Defendants that an accessory panel smaller than 102 square inches provides protection pursuant to NIJ Standard-0101.06 or threat level IIIA is false, placing the life of the wearer at risk.

127.    In June 2016, Relator learned that Point Blank had altered the wording on the label for certain accessory panel products. A picture of the new label, with highlighting added, is below.



COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 41

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

128.     The label of the product nevertheless continued to refer to NIJ CPL model AXIIIA (Alpha Elite TM), which is the model designation for full-sized vest sizes C1-C5 listed on the Compliant Product List.

**Point Blank Body Armor**
2102 SW 2nd Street Pompano Beach , FL 33069
Tel: 954-630-0900 Fax: 954-334-1705
http://www.pointblankarmor.com/

| IIIA | AXIIIA | Male | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
|------|--------|------|--------------|----|----|----|----|----|---------|--------|
| IIIA | AXBIIIA | Male | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |

129.     Because NIJ does not certify accessory panels, Point Blank's accessory panels could not be listed on the CPL at all, let alone under this model. Therefore, Point Blank's new product label is still false and misleading because it claims that the accessory panel is a CPL model. In addition, on information and belief, the name "AXIIIA" leads reasonable consumers to believe that the product offers threat level IIIA protection, when in fact, independent testing has revealed that accessory panels of this size do not offer this level of protection.

**E.     Defendants Falsely Advertise Accessory Panels.**

130.     In addition to their product labels and despite agreeing to not reference NIJ or CPL models in a manner inconsistent with their CTP agreements, Defendants sell their products by advertising on their websites, catalogs, pricelists and on third party websites, including the GSA[26] website, that their accessory panel products offer a certain level of ballistic protection and satisfy NIJ Standard-0101.06 or threat level IIIA and/or they reference the NIJ CPL models of other products when selling these accessory panels. These advertisements are knowingly false within the meaning of the relevant false claims acts.

---

[26] This website is administered by the federal General Service Administration and is used by both federal and State agencies to make purchases of a variety of products, including body armor. *See infra*, at ¶¶ 171-180.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 42

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**1.    FirstSpear**

131.        FirstSpear sells their products by advertising on their websites, catalogs, and on third party sales websites (including the GSA website) that their accessory panel products satisfy NIJ Standard-0101.06, or threat level IIIA, and/or by referencing NIJ CPL models. For example, the 2015 FirstSpear website advertises FirstSpear's MASS Modular Armor Supplement System – Collar piece as follows: "MASS™ gives additional protection to the neck/throat region, shoulders and upper arms...Pricing includes NIJ Level IIIA 06 Compliant soft armor."    This pricing statement falsely represents to a customer that the collar piece itself is NIJ Standard-0101.06 certified.

132.        FirstSpear's 2019 website offers the same MASS line of accessory products for sale, stating: "When additional armor is necessary ... MASS gives additional protection to the neck/throat region, shoulders, and upper arms. Federal, State and Local Government Sales Only – Pricing includes NIJ Level IIIA 06 Compliant soft armor."

133.        The FirstSpear catalog also makes representations regarding the products being NIJ Standard-0101.06 compliant. For example, the catalog states: "Soft Armor Ballistic Inserts complying with NIJ Category IIIA.06 or specific Military specification requirements are available from FirstSpear for an additional fee."

134.        FirstSpear also sells products through the GSA website where it falsely represents that the accessory panel products satisfy threat level IIIA and references a CPL model. For example, a collar piece and a groin piece are listed on the GSA website as follows:

> AXBIIIA STRANDHÖGG MASS COLLAR (PN: MS1ABDCO0H); **$149.01**; Manufacturer: FirstSpear / Point Blank; Sold and Shipped by GALLS LLC

> AXBIIIA STRANDHÖGG MASS GROIN (PN: MS1ABDGP0H); **$272.33**; Manufacturer: FirstSpear / Point Blank; Sold and Shipped by GALLS LLC

"AXBIIIA" is a model listed on the CPL for FirstSpear, PACA, Paraclete, and Point Blank.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

135.   On information and belief, FirstSpear marketed and published the above advertisements or caused them to be published despite knowing, deliberately ignoring, or recklessly disregarding, the fact that their accessory panels were not certified by NIJ, were not allowed to be certified to NIJ Standard-0101.06, were not listed on the CPL, and could not pass the NIJ testing for threat level IIIA.

**2.     Point Blank**

136.   Point Blank sells their products by advertising in their catalogs, websites, price lists, and other third party sales websites (including the GSA website), that their accessory panel products satisfy NIJ Standard-0101.06, or threat level IIIA, and/or by referencing NIJ CPL models. For example, excerpts from the 2014 Point Blank website catalog advertise a Point Blank body armor system "RAM Rapid Assault Mission," which includes vests with detachable accessory panels for shoulders and groin, as NIJ Standard-0101.06 IIIA and show the NIJ mark next to these products.

137.   Point Blank has claimed NIJ compliance for its accessory panel products by making the following representations in its marketing materials: "We currently have more NIJ.06 certified products than any other ballistics company in the industry with a key emphasis of providing our customers with lighter, more flexible body armor systems with greater ballistic capabilities," "Designed for the active assaulter, PARACLETE tactical vests provide optimal scalability. Each vest can accommodate NIJ .06 Level II or IIIA ballistic collar, throat, biceps and groin protection…" "Exceeds NIJ.06 Testing Requirements," "Standard NIJ 0101.06 Ballistic Options," "NIJ Standard 0101.06 certified," "NIJ 0101.06 Ballistic Options," "NIJ 0101.06 Ballistic Systems" "Dragon Fire 0101.06 Ballistic Options Available with NIJ .06 Level IIIA Ballistic Systems," or simply "0101.06" and "Threat Level IIIA." Point Blank also listed the "NIJ Standard" mark in its promotional materials.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9



10

11    138.    Point Blank lists numerous "complete sets" and collar, throat, groin, biceps, and

12  shoulders accessory panels for sale on the NASPO price lists, representing that all of them are

13  compliant with or certified to NIJ Standard-0101.06 and threat level IIIA and referencing NIJ CPL

14  models for these products. The complete set includes: collar, throat, biceps, and groin protection.

15  Point Blank represents that the complete sets—including the accessory panels—are "CPL

16  Models," and that they are certified to NIJ Standard 0101.06 and threat level IIIA.

17



18    **Point Blank Enterprises, Inc.**
Pricing Effective Date: April 1, 2017
NASPO ValuePoint Master Agreement #: 2016-181

19

| Product Description | Item # | Gender (M, F, N) | NIJ - CPL Model Designation | NIJ Standard | Threat Level | MSRP | Discount % from MSRP |
|---|---|---|---|---|---|---|---|
| Dragonfire Complete Set | DR3A3DC3D0 | M/F | AX8IIIA | 0101.06 | IIIA | $ 4,325.00 | 44% |
| Dragonfire Complete Set | DR3AXDC3D0 | M/F | AX8IA | 0101.06 | IIIA | $ 4,308.00 | 44% |
| Dragonfire Complete Set | DR3FLDC3D0 | M/F | FL8IIIA-1 | 0101.06 | IIIA | $ 3,797.00 | 44% |
| Dragonfire Complete Set | DR3DXDC3D0 | M/F | DX8IIA | 0101.06 | IIIA | $ 3,646.00 | 44% |
| Dragonfire Complete Set | DR3GNDC3D0 | M/F | GN8XIIIA | 0101.06 | IIIA | $ 3,179.00 | 44% |
| Dragonfire Complete Set | DR3NDC3D0 | M/F | XP8IIA-1 | 0101.06 | IIIA | $ 3,310.00 | 44% |
| Dragonfire Complete Set | DR3BC3DC3D0 | M/F | BC8IIA | 0101.06 | IIIA | $ 2,845.00 | 44% |
| Dragonfire Complete Set | DR3C3DC3D0 | M/F | CX8A-2 | 0101.06 | IIIA | $ 2,764.00 | 44% |
| | | | | | | | |
| Collar-Accessories for Operator and International | CO1DC3C3D0 | M/F | XP8IA-1 | 0101.06 | IIIA | $ 132.00 | 46% |
| Collar-Accessories for Operator and International | CO1BC3C3D0 | M/F | BC8IA | 0101.06 | IIIA | $ 134.00 | 46% |
| Collar-Accessories for Operator and International | CO1C3C3D0 | M/F | CX8A-2 | 0101.06 | IIIA | $ 132.00 | 46% |
| Throat-Accessories for Operator and International | TP1A3DC3D0 | M/F | AX8IIIA | 0101.06 | IIIA | $ 140.00 | 46% |
| Throat-Accessories for Operator and International | TP1AXDC3D0 | M/F | AX8IA | 0101.06 | IIIA | $ 138.00 | 46% |
| Throat-Accessories for Operator and International | TP1FLDC3D0 | M/F | FL8IIIA-1 | 0101.06 | IIIA | $ 130.00 | 46% |
| Throat-Accessories for Operator and International | TP1DXDC3D0 | M/F | DX8IA | 0101.06 | IIIA | $ 100.00 | 46% |
| Throat-Accessories for Operator and International | TP1GNDC3D0 | M/F | GN8XIIIA | 0101.06 | IIIA | $ 93.00 | 46% |
| Throat-Accessories for Operator and International | TP1XD1C3D0 | M/F | XP8IA-1 | 0101.06 | IIIA | $ 98.00 | 46% |
| Throat-Accessories for Operator and International | TP1BC3C3D0 | M/F | BC8IA | 0101.06 | IIIA | $ 90.00 | 46% |
| Throat-Accessories for Operator and International | TP1C3C3D0 | M/F | CX8A-2 | 0101.06 | IIIA | $ 88.00 | 46% |
| Groin-Accessories for Operator and International | GP1A3DC3D0 | M/F | AX8IIIA | 0101.06 | IIIA | $ 348.00 | 46% |
| Groin-Accessories for Operator and International | GP1AXDC3D0 | M/F | AX8IA | 0101.06 | IIIA | $ 331.00 | 46% |
| Groin-Accessories for Operator and International | GP1FLDC3D0 | M/F | FL8IIIA-1 | 0101.06 | IIIA | $ 324.00 | 46% |

20
21
22
23
24
25
26

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 45

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

139.     Point Blank's catalogs market their tactical body armor products by promoting the "availab[ility of] NIJ-Standard-0101.06 Level IIIA ballistic system" and they also say that options for purchase with the tactical body armor include: "Ballistic yoke/collar, throat, biceps, and groin protection." Similarly, Point Blank's Paraclete Brand catalog advertises tactical body armor by making false representations about the protection that its accessory panel products can provide:

> Designed for the active assaulter, PARACLETE tactical vests provide optimal scalability. Each vest can accommodate NIJ .06 Level II or IIIA ballistic collar, throat, biceps and groin protection….

140.     Point Blank sells products through the GSA website where they falsely represent that their accessory panel products satisfy NIJ threat level IIIA and NIJ-Standard 0101.06 and falsely reference NIJ CPL models. For example, a complete set and collar piece are sold with the following false statements:

> Tactical Vest (includes accessories) ALPHA-1 SE Complete Set, M/F, AXIIIA, IIIA, 101.06, Includes 5 Free Pouches; $2,682.69; Manufacturer: Point Blank Enterprises; Sold and Shipped by SRT Supply, Inc.

> COLLAR-ACCESSORIES FOR ARMIS, M/F, CIIIA-2, IIIA, 101.06; $60.34; Manufacturer: Point Blank Enterprises; Sold and Shipped by SRT Supply Inc.

"AXIIIA" and "CIIIA-2" are models listed on the CPL for PACA, Paraclete, and Point Blank.

141.     On information and belief, Point Blank marketed and published the above advertisements or caused them to be published despite knowing, deliberately ignoring, or recklessly disregarding, the fact that their accessory panels were not certified by NIJ, were not allowed to be certified to NIJ Standard 0101.06, were not listed on the CPL, and could not pass the NIJ testing for threat level IIIA.

**3.     Armor Express**

142.     Armor Express sells their products by advertising on their websites, catalogs, pricelists, and on third party sales websites (including the GSA website), that accessory panels offer ballistics protection and satisfy NIJ Standard-0101.06, or threat level IIIA and/or by

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 46

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

referencing NIJ CPL model numbers. For example, Armor Express's website advertised the Lighthawk XT tactical vest with "level IIIA Halo™ ballistic system" with accessories including shoulder flanks, retractable nape protector, throat protector, structured deltoid protectors and groin guards. Armor Express's website refers to its tactical vest products as all having "removable ballistic throat" "optional removable ballistic yoke/collar assembly" "optional structured ballistic deltoid protector" and "optional removable ballistic groin protector" accessory panels add-ons.

143.     Armor Express makes false representations in their catalogs by falsely inflating the level of ballistics protection offered by these products and claiming that the products provide NIJ Level IIIA protection or are certified to NIJ Standard-0101.06. The 2013 Armor Express catalog stated that its Lighthawk XT "vest, when combined with level IIIA Halo™ ballistic system met the challenge...." "Start with the basic front and rear soft armor panels and scale up to full blown tactical coverage for high risk encounters. Our complete kit of modular ballistic accessories includes: Shoulder Flanks with Integrated Ballistic Collars, retractable pull-up Nape Protector, Throat Protector, Structured Deltoid Protectors, and a retractable pull-down Groin Guard."



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

144.     One of Armor Express's selling points for their tactical body armor is that Armor Express tests "beyond the NIJ Standard." Armor Express also claims that its Lighthawk products can offer protection they call "Quad Compliance." To be considered an Armor Express Quad Compliant armor "the product must be an NIJ 0101.06 Certified package, put through the Armor Express Special Threat Testing, and be both DEA Armor Testing Protocol-Compliant and subjected to the FBI Body Armor Test Protocol."

145.     On price lists Armor Express offers both ballistic vests and accessory panels for sale. These accessory panels include yoke and collar assembly, groin guards, enhanced femoral groin protector, nape protectors, shoulder flanks and collar, structured deltoids, and throat protectors. Armor Express falsely represents that these products are "NIJ-CPL Model Designations," and that they are certified to NIJ Standard-0101.06 and threat level IIIA. These representations are false as these accessory panels may not be listed on the CPL, nor do they satisfy NIJ Standard-0101.06, and or threat level IIIA.

**ARMOR AE EXPRESS™**

Armor Express
Pricing Effective Date: January 1, 2018
Ohio State Term Contract Price List

| Product Description | Item # | Gender (M, F, N) | NIJ-CPL Model Designation | NIJ Standard | Threat Level | MSRP |
|---|---|---|---|---|---|---|
| Lighthawk Groin Guard - Vortex IIIA | TLYXGGVTX3AG2 | N | AEXPG2-A-IIIA | 0101.06 | IIIA | $ 318.00 |
| Lighthawk Groin Guard - Halo IIIA | TLTXGGHAL3A6 | N | HLO-B-IIIA | 0101.06 | IIIA | $ 318.00 |
| Lighthawk Groin Guard - Quantum IIIA | TLTXGGQUA3AG2 | N | QTXG2-A-IIA | 0101.06 | IIIA | $ 235.00 |
| Lighthawk Groin Guard - FMS IIIA | TLTXGGFMS3A6 | N | FMS-A-IIIA | 0101.06 | IIIA | $ 188.00 |
| Lighthawk Nape Protector - Razor IIIA | TLTXNPRZR3AG2 | N | RZRG2-A-IIIA | 0101.06 | IIIA | $ 263.00 |
| Lighthawk Nape Protector - Seraph IIIA | TLTXNPSER3AG2 | N | SERG2-A-IIIA | 0101.06 | IIIA | $ 222.00 |
| Lighthawk Nape Protector - Vortex IIIA | TLTXNPVTX3AG2 | N | AEXPG2-A-IIIA | 0101.06 | IIIA | $ 263.00 |
| Lighthawk Nape Protector - Halo IIIA | TLTXNPHAL3A6 | N | HLO-B-IIIA | 0101.06 | IIIA | $ 263.00 |
| Lighthawk Nape Protector - Quantum IIIA | TLTXNPQUA3AG2 | N | QTXG2-A-IIA | 0101.06 | IIIA | $ 153.00 |
| Lighthawk Nape Protector - FMS IIIA | TLTXNPFMS3A6 | N | FMS-A-IIIA | 0101.06 | IIIA | $ 134.00 |
| Lighthawk Shoulder Flanks & Collar - Razor IIIA | TLYXSCRZR3AG2 | N | RZRG2-A-IIIA | 0101.06 | IIIA | $ 704.00 |
| Lighthawk Shoulder Flanks & Collar - Seraph IIIA | TLTXSCSER3AG2 | N | SERG2-A-IIIA | 0101.06 | IIIA | $ 679.00 |
| Lighthawk Shoulder Flanks & Collar - Vortex IIIA | TLYXSCVTX3AG2 | N | AEXPG2-A-IIIA | 0101.06 | IIIA | $ 652.00 |
| Lighthawk Shoulder Flanks & Collar - Halo IIIA | TLTXSCHAL3A6 | N | HLO-B-IIIA | 0101.06 | IIIA | $ 636.00 |
| Lighthawk Shoulder Flanks & Collar - Quantum IIIA | TLTXSCQUA3AG2 | N | QTXG2-A-IIA | 0101.06 | IIIA | $ 525.00 |
| Lighthawk Shoulder Flanks & Collar - FMS IIIA | TLTXSCFMS3A6 | N | FMS-A-IIIA | 0101.06 | IIIA | $ 453.00 |
| Lighthawk Structured Deltoids - Razor IIIA | TLTXSLRZR3AG7 | N | RZRG2-A-IIIA (EM) | 0101.06 | IIIA | $ 1,062.00 |
| Lighthawk Structured Deltoids - Seraph IIIA | TLTXSLSER3AG2 | N | SERG2-A-IIIA | 0101.06 | IIIA | $ 1,164.00 |
| Lighthawk Structured Deltoids - Vortex IIIA | TLYXSLVTX3AG2 | N | AEXPG2-A-IIIA | 0101.06 | IIIA | $ 1,108.00 |
| Lighthawk Structured Deltoids - Halo IIIA | TLYXSLHAL3A6 | N | HLO-B-IIIA | 0101.06 | IIIA | $ 1,088.00 |
| Lighthawk Structured Deltoids - Quantum IIIA | TLTXSLQUA3AG2 | N | QTXG2-A-IIA | 0101.06 | IIIA | $ 834.00 |
| Lighthawk Structured Deltoids - FMS IIIA | TLTXSLFMS3A6 | N | FMS-A-IIIA | 0101.06 | IIIA | $ 684.00 |
| Lighthawk Throat Protector - Razor IIIA | TLTXTPRZR3AG2 | N | RZRG2-A-IIIA | 0101.06 | IIIA | $ 240.00 |
| Lighthawk Throat Protector - Seraph IIIA | TLTXTPSER3AG2 | N | SERG2-A-IIIA | 0101.06 | IIIA | $ 206.00 |
| Lighthawk Throat Protector - Vortex IIIA | TLTXTPVTX3AG2 | N | AEXPG2-A-IIIA | 0101.06 | IIIA | $ 193.00 |
| Lighthawk Throat Protector - Halo IIIA | TLYXTPHAL3A6 | N | HLO-B-IIIA | 0101.06 | IIIA | $ 193.00 |
| Lighthawk Throat Protector - Quantum IIIA | TLTXTPQUA3AG2 | N | QTXG2-A-IIA | 0101.06 | IIIA | $ 141.00 |
| Lighthawk Throat Protector - FMS IIIA | TLTXTPFMS3A6 | N | FMS-A-IIIA | 0101.06 | IIIA | $ 124.00 |

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 48

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

146.     Armor Express sells products through the GSA website where they falsely represent that their accessory panel products satisfy NIJ threat level IIIA and NIJ-Standard 0101.06. For example, a shoulder pad system is sold with the following false statements.

ASP SHOULDER PAD SYSTEM – BALLISTICS; Armor Express - ASP Shoulder Pad System - BALLISTICS (set) FMS Level IIIA - NIJ Model#: FMS-A-IIIA; Mfr. Part No.: TSPFMS3A6; **$68.50**; Manufacturer: Armor Express; Sold and Shipped by Tactical & Survival Specialties Inc.

"FMS-A-IIIA" is a model listed on the CPL for Armor Express.

147.     On information and belief, Armor Express marketed and published the above advertisements or caused them to be published despite knowing, deliberately ignoring, or recklessly disregarding, the fact that their accessory panels were not certified by NIJ, and were not allowed to be certified to NIJ Standard 0101.06, were not listed on the CPL, and could not pass the NIJ testing for threat level IIIA.

**4.     KDH Defense Systems**

148.     KDH sells their products by advertising on their website, catalogs, pricelists, through third party dealers, and also on third party sales websites (including the GSA website) that their accessory panel products satisfy NIJ Standard-0101.06, or threat level IIIA and/or by referencing NIJ CPL models.

149.     The KDH catalog states: "KDH's robust portfolio of NIJ Standard 0101.06 certified soft armor ballistic solutions provides the highest levels of quality, comfort and performance… KDH's research and development efforts continue to provide lighter, more flexible and higher performing ballistic solutions exceeding the NIJ standards…." The catalog features a list of the KDH NIJ Standard-0101.06 Ballistic Systems and includes the following referenced CPL models: STD-103-IIIA; MD-101-IIIA; VLT-IIIA; LT-102-IIIA; and LTST-102-IIIA. The catalog states: "KDH Defense Systems warrants that the above referenced NIJ Models meet the designated threat level." KDH's bicep/arm protector, ballistic throat protector, ballistic collar protector, groin protector, and lower back protector accessory panel products are then listed for sale by reference

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 49

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to the same models as those listed as NIJ certified in the KDH catalog, and those found on the CPL. Such use of the certified NIJ CPL models in reference to the accessory panels is not permitted pursuant to NIJ-Standard 0101.06 or the manufacturer's CTP agreement.

**KDH Defense Systems, Inc.**
750A Fieldcrest Road Eden , NC 27288
Tel: (336) 635-4158 Fax: (336) 635-4160
http://www.kdhdefensesystems.com/

| Threat Level | Model Designation | Gender | Opening | Size Range (Highlighted Boxes) | | | | | Warranty | Model Status |
|---|---|---|---|---|---|---|---|---|---|---|
| IIIA | LT-102-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | LTST-102-IIIA | Male | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | LTSTF-102-IIIA | Female | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | MD-101-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | STD-103-IIIA | Neutral | Side Opening | | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | STD-104-IIIA | Neutral | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | VLTF-IIIA | Female | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |
| IIIA | VLT-IIIA | Male | Side Opening | C1 | C2 | C3 | C4 | C5 | 5 Years | Active |

150.    KDH's dealer price lists, RFP response price lists, and NASPO price lists for accessory panels all falsely represent that the products are certified to NIJ Standard-0101.06 and/or threat level IIIA and reference the certified NIJ CPL models for each of the accessory panel products. KDH represents to purchasers that these products are "Ballistic Models" that satisfy NIJ Standard-0101.06, each with their own CPL model. These representations are false as these accessory panels may not be listed on the CPL, nor do they satisfy NIJ Standard-0101.06, or threat level IIIA.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 50

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| TACTICAL VEST ACCESSORIES | | | |
| Product Description | Ballistic Model (NIJ 0101.06) | Retail Price | Dealer Price |
|---|---|---|---|
| Bicep/Arm Protector | LT-102-IIIA | $ 412.50 | $ 165.00 |
| Bicep/Arm Protector | MD-101-IIIA | $ 350.00 | $ 140.00 |
| Bicep/Arm Protector | STD-103-IIIA | $ 300.00 | $ 120.00 |
| Ballistic Throat (with collar only) | LT-102-IIIA | $ 125.00 | $ 50.00 |
| Ballistic Throat | MD-101-IIIA | $ 100.00 | $ 40.00 |
| Ballistic Throat | STD-103-IIIA | $ 75.00 | $ 30.00 |
| Ballistic Collar | LT-102-IIIA | $ 162.50 | $ 65.00 |
| Ballistic Collar | MD-101-IIIA | $ 137.50 | $ 55.00 |
| Ballistic Collar | STD-103-IIIA | $ 112.50 | $ 45.00 |
| Groin Protector | LT-102-IIIA | $ 225.00 | $ 90.00 |
| Groin Protector | MD-101-IIIA | $ 187.50 | $ 75.00 |
| Groin Protector | STD-103-IIIA | $ 150.00 | $ 60.00 |



KDH Defense Systems, Inc.
Pricing Effective Date: October 1, 2017
NASPO ValuePoint Master Agreement #: 2016-182



| Product Description | Item # | Gender (M, F, N) | NIJ - CPL Model Designation | NIJ Standard | Threat Level | MSRP | Discount % from NSRP | Contract 1# |
|---|---|---|---|---|---|---|---|---|
| BICEP/ARM PROTECTOR STD-103-IIIA | KDH-TA-005 | N/A | STD-103-IIIA | 0101.06 | IIIA | $ 275.00 | 43% | $ 156.75 |
| BICEP/ARM PROTECTOR LT-STF-103-II | KDH-TA-006 | N/A | LTSF-103-II | 0101.06 | II | $ 580.00 | 43% | $ 330.60 |
| BALLISTIC THROAT with VcT IIIA | KDH-TA-008 | N/A | VcT IIIA | 0101.06 | IIIA | $ 385.00 | 43% | $ 219.45 |
| BALLISTIC THROAT with LTST-102-IIIA | KDH-TA-009 | N/A | LTST-102-IIIA | 0101.06 | IIIA | $ 350.00 | 43% | $ 88.35 |
| BALLISTIC THROAT with LT-102-IIIA | KDH-TA-010 | N/A | LT-102-IIIA | 0101.06 | IIIA | $ 325.00 | 43% | $ 73.25 |
| BALLISTIC THROAT with MD-102-IIIA | KDH-TA-011 | N/A | MD-101-IIIA | 0101.06 | IIIA | $ 120.00 | 43% | $ 53.00 |
| BALLISTIC THROAT with STD-103-IIIA | KDH-TA-012 | N/A | STD-103-IIIA | 0101.06 | IIIA | $ 75.00 | 43% | $ 42.75 |
| BALLISTIC THROAT with LTST-103-II | KDH-TA-013 | N/A | LTST-103-II | 0101.06 | II | $ 175.00 | 43% | $ 99.75 |
| BALLISTIC COLLAR with VcT IIIA | KDH-TA-015 | N/A | VcT IIIA | 0101.06 | IIIA | $ 250.00 | 43% | $ 142.50 |
| BALLISTIC COLLAR with LTST-102-IIIA | KDH-TA-016 | N/A | LTST-102-IIIA | 0101.06 | IIIA | $ 500.00 | 43% | $ 214.00 |
| BALLISTIC COLLAR with LT-102-IIIA | KDH-TA-017 | N/A | LT-102-IIIA | 0101.06 | IIIA | $ 162.50 | 43% | $ 92.63 |
| BALLISTIC COLLAR with MD-101-IIIA | KDH-TA-018 | N/A | MD-101-IIIA | 0101.06 | IIIA | $ 130.00 | 43% | $ 74.10 |
| BALLISTIC COLLAR with STD-103-IIIA | KDH-TA-019 | N/A | STD-103-IIIA | 0101.06 | IIIA | $ 115.00 | 43% | $ 65.55 |
| BALLISTIC COLLAR with LTST-103-II | KDH-TA-020 | N/A | LTST-103-II | 0101.06 | II | $ 225.00 | 43% | $ 128.25 |
| GROIN PROTECTOR with VcT-IIIA | KDH-TA-022 | N/A | VcT IIIA | 0101.06 | IIIA | $ 450.00 | 43% | $ 256.50 |
| GROIN PROTECTOR with LTST-102-IIIA | KDH-TA-023 | N/A | LTST-102-IIIA | 0101.06 | IIIA | $ 385.00 | 43% | $ 219.45 |
| GROIN PROTECTOR with LT-102-IIIA | KDH-TA-024 | N/A | LT-102-IIIA | 0101.06 | IIIA | $ 225.00 | 43% | $ 128.25 |

151.     KDH sells products through the GSA website where they falsely represent that their accessory panel products satisfy NIJ threat level IIIA and NIJ-Standard 0101.06. For example, a tactical vest system is sold with the following false statements.

VBSS Tactical Vest **$1,410.58**; Features full wrap-around cummerbund with front hook/loop flap, integrated, single-point, ambidextrous weapons sling, front and back plate pockets to accommodate ESAPI plates, single-handed emergency egress quick-release system, ventilation channels, MOLLE webbing, includes bicep, throat, collar, and groin protection. Level IIIA - NIJ Standard 0101.06 Compliant KDH Body Armor, Threat Level 3A, Areal Density 1.23 psf, 0.275" Thick, V50 - .357 Sig 1796 fps, V50 - .44 Mag 1568 fps, Special Threats DHS, 2, 4, 16, 64, RCC

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

17 gr Frag.; Manufacturer KDH Defense Systems; Sold and Shipped by Shore Solutions, Inc.

152.     On information and belief, KDH published the above advertisements or caused them to be published despite knowing, deliberately ignoring, or recklessly disregarding, the fact that their accessory panels were not certified by NIJ, were not allowed to be certified to NIJ Standard 0101.06, were not listed on the CPL, and could not pass the NIJ testing for threat level IIIA.

**5.     Safariland**

153.     Safariland sells their products by advertising on their websites, catalogs, pricelists, and on third party sales websites (including the GSA website) that their accessory panel products offer ballistics protection and satisfy NIJ Standard-0101.06 or threat level IIIA, and/or by referencing NIJ CPL models.

154.     Safariland advertises their Ballistic Collar Protector on their website by stating: "Scale-up your Protech Tactical Carrier: The Ballistic collar is an optional accessory with the ability to provide additional ballistic coverage of the neck portion of the upper torso….Choose between 10 different ballistic panel packages to complete the ballistic [c]overage [sic] that's just right for you…Available with Xtreme SX, Summit, Xtreme XT, Monarch, BV02 and PX01 ballistic panel packages, Type II and IIIA."

155.     Safariland's GH Armor advertised their Atlas T3 product on their website by stating that it was "[e]ngineered as a scalable ballistic platform with…a range of accessories that are



COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 52

compatible with all Atlas series vests…Available in all Level IIIA ballistic packages." The Atlas

T3 Plate Carrier was pictured on the website with accessory panels.

156.     The Safariland Group's body armor catalogs make false representations regarding

their products offering certain levels of ballistics protection, i.e. providing NIJ threat level IIIA or

NIJ Standard-0101.06 protection.

  A. Excerpts from the ABA Body Armor – Second Chance Body Armor Catalog
     state, "[a]t Safariland, we offer armor solutions that meet or exceed the National
     Institute of Justice (NIJ) standards." ABA – Second Chance states that its
     Tactical Assault Carrier (TAC) with Tactical Options "includes … an upper
     arm and groin attachment system for optional extremity protection."

  B. Excerpts from the GH Armor Product Catalog state that "All products are
     designed to meet and exceed federal test standards…Special threat testing is
     available for select models and performed at NIJ-certified independent test
     facilities." The catalog also states that the QUAD Modular Tactical Vest
     System is "Available in all Level IIIA ballistic packages" and then states that
     features of the vest system include all of the accessory panels. The catalog also
     shows the Atlas T3, T5, and T7 systems with accessories and states that "Level
     IIIA ballistic packages" are available.

  C. Excerpts from the Protech catalog state, "Protech Tactical armor models are NIJ
     Standard-0101.06 approved…." The catalog also states that Protech Tactical's
     standard features on the FAV MKII Enhanced carrier include, "removable
     front, back, shoulder and 6" x 10" side Type IIIA ballistic panels…" as well as
     "Detachable ballistic accessories including: collar, throat, upper arm (biceps),
     standard or enhanced groin and A-PEC side chest protective inserts." Protech
     makes similar claims regarding the APV, APV QR, Titan Assault Enhanced,
     CAV (Core Assault Vest), and FAV T1/T2 carrier systems.

157.     On their price lists Safariland offers both the vests and optional accessory panels

for sale.  These optional panel items include collar, throat, upper arm, standard groin, enhanced

groin, and side chest protection. Safariland represents that these products are certified as NIJ

Standard-0101.06 Type IIIA compliant. Safariland also represents to purchasers that these

products are certified NIJ CPL models. These representations are false as these accessory panels

may not be listed on the CPL, nor do they satisfy NIJ Standard-0101.06 or threat level IIIA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

## TACTICAL ACCESSORIES

**SAFARILAND, LLC**
NASPO VALUE POINT MASTER AGREEMENT No. 2016-178

| Part Number | Description | NIJ Model | MSRP | NASPO | % Off MSRP | Delivery |
|---|---|---|---|---|---|---|
| **BALLISTIC ACCESSORIES** | | | | | | |
| **COLLAR** | | | | | | |
| 1314092 | Collar, Hardware® IIIA Level IIIA | HPB-2015-IG-GB | $300.00 | **$141.00** | 53.0% | 60 Days |
| 1314363 | Collar, S-X Level IIIA | IIA-3A00S-SX02 | $210.00 | $98.70 | 53.0% | 60 Days |
| 1229000 | Collar, Metro® Level IIIA | IIA-3A00S-MRG2 | $175.00 | $84.98 | 51.7% | 60 Days |
| **THROAT** | | | | | | |
| 1314093 | Throat, Hardware® IIIA Level IIIA | HPB-2015-IG-GB | $250.00 | $126.73 | 49.3% | 60 Days |
| 1314364 | Throat, S-X Level IIIA | IIA-3A00S-SX02 | $235.00 | $136.98 | 42.3% | 60 Days |
| 1229801 | Throat, Metro® Level IIIA | IIA-3A00S-MRG2 | $180.00 | $84.89 | 53.0% | 60 Days |

## Protech Retail Price List
### Effective Date: October 1, 2014

**A Safariland Brand**

Lot I Item 7 - Soft Armor

Lot II Item 7 - Hard Armor

### TACTICAL VESTS

| DESCRIPTION | | MSRP |
|---|---|---|
| **FM™ NXT ENHANCED** | | |
| SHEM Series (Front/Back) 6" x 19" Side/Shoulder Protection; NIJ 0101.06 Type IIIA Compliant | | $ 2,930.00 |
| Vest w/Modular Webbing Attachment System | | $ 186.00 |
| Optional Throat (Detachable) | | $ 170.00 |
| Optional Upper Arm Protection (Detachable) | | $ 460.00 |
| Optional Upper Arm Protection (Short) (Detachable) | | $ 360.00 |
| Optional Standard Groin Protection (Detachable) | | $ 325.00 |
| Optional Enhanced Groin Protection (Detachable) | | $ 360.00 |
| Optional A-PEC Side Chest Protection (Detachable) | | $ 425.00 |
| Optional Spacer Mesh™ Inserts (Detachable) | | $ 136.00 |
| **BRR1 Series (Front/Back) 6" x 19" Side/Shoulder Protection; NIJ 0101.06 Type IIIA Compliant** | | |
| Vest w/Modular Webbing Attachment System | | $ 2,190.00 |
| Optional Collar (Detachable) | | $ 168.00 |
| Optional Throat (Detachable) | | $ 160.00 |
| Optional Upper Arm Protection (Detachable) | | $ 460.00 |
| Optional Upper Arm Protection (Short) (Detachable) | | $ 360.00 |
| Optional Standard Groin Protection (Detachable) | | $ 280.00 |
| Optional Enhanced Groin Protection (Detachable) | | $ 315.00 |
| Optional A-PEC Side Chest Protection (Detachable) | | $ 210.00 |
| Optional Spacer Mesh™ Inserts (Detachable) | | $ 136.00 |

## GH ARMOR SYSTEMS
### NASPO ValuePoint Master Agreement # 2016-179
Effective January 7, 2013

| | TACTICAL BODY ARMOR | QUAD TACTICAL VEST | | | | |
|---|---|---|---|---|---|---|
| **Product #** | **Description** | **NIJ** | **Level** | **Qty 1-50** | **Discount %** | **Qty 51+** | **MSRP** |
| GH-QD1-CRR | QUAD Tactical Vest Carrier (Carrier Only) | N/A | N/A | $359.60 | 42% | $347.20 | $620.00 |
| GH-QD1-HX03-IIIA | QUAD Ballistic Panels - Helix IIIA HX03 (Panels Only) | 06 | IIIA | $1,421.00 | 42% | $1,372.00 | $2,450.00 |
| GH-QD1-LX02-IIIA | QUAD Ballistic Panels - LiteX IIIA LX02 (Panels Only) | 06 | IIIA | $951.20 | 42% | $918.40 | $1,640.00 |
| GH-QD1-PX02-IIIA | QUAD Ballistic Panels - ProX IIIA PX02 (Panels Only) | 06 | IIIA | $638.00 | 42% | $616.00 | $1,100.00 |

| | TACTICAL BODY ARMOR | QUAD TACTICAL ACCESSORIES | | | | |
|---|---|---|---|---|---|---|
| **Product #** | **Description** | **NIJ** | **Level** | **Qty 1-50** | **Discount %** | **Qty 51+** | **MSRP** |
| GH-QD1-CMB-CRR | QUAD Cummerbund Carrier (Carrier Only) | N/A | N/A | $81.20 | 42% | $89.60 | $160.00 |
| GH-QD1-CMB-HX03-IIIA | QUAD Cummerbund Ballistic Insert Panels (Pair) - Helix IIIA HX03 (Panels Only) | 06 | IIIA | $243.60 | 42% | $235.20 | $420.00 |
| GH-QD1-CMB-LX02-IIIA | QUAD Cummerbund Ballistic Insert Panels (Pair) - LiteX IIIA LX02 (Panels Only) | 06 | IIIA | $168.20 | 42% | $162.40 | $290.00 |
| GH-QD1-CMB-PX02-IIIA | QUAD Cummerbund Ballistic Insert Panels (Pair) - ProX IIIA PX02 (Panels Only) | 06 | IIIA | $121.80 | 42% | $117.60 | $210.00 |
| GH-QD1-SHLD-HX03-IIIA | QUAD Shoulder Ballistic Insert Panels (Pair) - Helix IIIA HX03 (Panels Only) | 06 | IIIA | $179.80 | 42% | $173.60 | $310.00 |
| GH-QD1-SHLD-LX02-IIIA | QUAD Shoulder Ballistic Insert Panels (Pair) - LiteX IIIA LX02 (Panels Only) | 06 | IIIA | $124.70 | 42% | $120.40 | $215.00 |
| GH-QD1-SHLD-PX02-IIIA | QUAD Shoulder Ballistic Insert Panels (Pair) - ProX IIIA PX02 (Panels Only) | 06 | IIIA | $95.70 | 42% | $92.40 | $165.00 |
| GH-QD1-CLR-HX03-IIIA | QUAD Collar Protector with Panels - Helix IIIA HX03 | 06 | IIIA | $194.30 | 42% | $187.60 | $335.00 |
| GH-QD1-CLR-LX02-IIIA | QUAD Collar Protector with Panels - LiteX IIIA LX02 | 06 | IIIA | $145.00 | 42% | $140.00 | $250.00 |
| GH-QD1-CLR-PX02-IIIA | QUAD Collar Protector with Panels - ProX IIIA PX02 | 06 | IIIA | $116.00 | 42% | $112.00 | $200.00 |
| GH-QD1-THR-HX03-IIIA | QUAD Throat Protector with Panels - Helix IIIA HX03 | 06 | IIIA | $136.30 | 42% | $131.60 | $235.00 |
| GH-QD1-THR-LX02-IIIA | QUAD Throat Protector with Panels - LiteX IIIA LX02 | 06 | IIIA | $104.40 | 42% | $100.80 | $180.00 |
| GH-QD1-THR-PX02-IIIA | QUAD Throat Protector with Panels - ProX IIIA PX02 | 06 | IIIA | $87.00 | 42% | $84.00 | $150.00 |

1

2

3

| | | | | | | |
|---|---|---|---|---|---|---|
| **GH Armor Systems, Inc.** | | | | | | |
| **READY IS THE ONLY OPTION.** | | **Pricing Effective Date: July 1, 2017** | | | | |
| | | **NASPO ValuePoint Master Agreement # 2016-179** | | | | |

| Product Description | Item # | Gender (M, F, N) | NIJ - CPL Model Designation | NIJ Standard | Threat Level | MSRP | Discount % from MSRP |
|---|---|---|---|---|---|---|---|
| Atlas Collar Protector with Panels - HeliX IIIA | GH-AT-CLR-HX3A | N | GPAIIIA-2 | 0101.06 | IIIA | $ 330.00 | 42% |
| Atlas Collar Protector with Panels - LiteX IIIA | GH-AT-CLR-LX3A | N | GPBIIIA-2 | 0101.06 | IIIA | $ 250.00 | 42% |
| Atlas Collar Protector with Panels - ProX IIIA | GH-AT-CLR-PX3A | N | GPCIIIA-2 | 0101.06 | IIIA | $ 200.00 | 42% |
| Atlas Throat Protector with Panels - Ethos IIIA | GH-AT-THR-EX3A | N | GPXIIIA | 0101.06 | IIIA | $ 225.00 | 42% |
| Atlas Throat Protector with Panels - HeliX IIIA | GH-AT-THR-HX3A | N | GPAIIIA-2 | 0101.06 | IIIA | $ 200.00 | 42% |
| Atlas Throat Protector with Panels - LiteX IIIA | GH-AT-THR-LX3A | N | GPBIIIA-2 | 0101.06 | IIIA | $ 180.00 | 42% |
| Atlas Throat Protector with Panels - ProX IIIA | GH-AT-THR-PX3A | N | GPCIIIA-2 | 0101.06 | IIIA | $ 135.00 | 42% |
| Atlas Bicep Protectors (Pair) with Panels - Ethos IIIA | GH-AT-BCP-EX3A | N | GPXIIIA | 0101.06 | IIIA | $ 600.00 | 42% |
| Atlas Bicep Protectors (Pair) with Panels - HeliX IIIA | GH-AT-BCP-HX3A | N | GPAIIIA-2 | 0101.06 | IIIA | $ 550.00 | 42% |
| Atlas Bicep Protectors (Pair) with Panels - LiteX IIIA | GH-AT-BCP-LX3A | N | GPBIIIA-2 | 0101.06 | IIIA | $ 430.00 | 42% |
| Atlas Bicep Protectors (Pair) with Panels - ProX IIIA | GH-AT-BCP-PX3A | N | GPCIIIA-2 | 0101.06 | IIIA | $ 355.00 | 42% |
| Atlas Groin Protector with Panels - Ethos IIIA | GH-AT-GRN-EX3A | N | GPXIIIA | 0101.06 | IIIA | $ 400.00 | 42% |
| Atlas Groin Protector with Panels - HeliX IIIA | GH-AT-GRN-HX3A | N | GPAIIIA-2 | 0101.06 | IIIA | $ 370.00 | 42% |
| Atlas Groin Protector with Panels - LiteX IIIA | GH-AT-GRN-LX3A | N | GPBIIIA-2 | 0101.06 | IIIA | $ 290.00 | 42% |
| Atlas Groin Protector with Panels - ProX IIIA | GH-AT-GRN-PX3A | N | GPCIIIA-2 | 0101.06 | IIIA | $ 245.00 | 42% |

158.     Safariland sells products through the GSA website where they falsely represent that their accessory panel products satisfy NIJ threat level IIIA and NIJ-Standard 0101.06. For example, a tactical vest system and biceps protectors are sold with the following false statements.

> FAV MKII Enhanced (1000 D. Cordura) Vest; **$1,585.40**; P6-FMR3-XXXX-AYX - NIJ-0101.06 Removable Type IIIA MR01 Ballistic Panels. Removable, integrated shoulder ballistic inserts. … Removable internal cummerbund controls front and back platform during tactical maneuvers. Removable shoulder-mounted D-rings for weapon sling. Removable dual weapon retention pads. Pull-down groin attachment system for standard bal; Manufacturer: Safariland (Protech); Sold and Shipped by ADS, Inc.

> Bicep Protectors Tactical; **$257.57**; Size One Size Color MultiCam Areal Density 1.16 psf Material 500d Cordura NIJ Armor Rating NIJ 0101.06 Level 3A Ballistics Armor Thickness 0.270 In. Number of Pockets (Inside) 0 Number of Pockets (Outside) 0 Fits QUAD Tactical Vest For Use With QUAD Tactical Vest; Manufacturer: GH Armor Systems; Sold and Shipped by: Wrigglesworth Enterprises, Inc.

159.     On information and belief, Safariland marketed or published the above advertisements or caused them to be published despite knowing, deliberately ignoring, or recklessly disregarding, the fact that their accessory panels were not certified by NIJ, were not allowed to be certified to NIJ Standard 0101.06, were not listed on the CPL, and could not pass the NIJ testing for threat level IIIA.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 55

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**F.      Defendants Presented False Claims to the Government.**

160.      By marketing and selling falsely labeled accessory products to the United States Government and the government of the States and/or their subdivisions, Defendants have presented or caused to be presented false and/or fraudulent claims to federal, state, and local governments and these governments have paid the claims. Defendants' false statements and/or records concerning the certification and level of protection offered by Defendants' accessory panels were material to these false claims.

161.      These false claims have affected many federal and state agencies because collectively Defendants supply a large proportion of the body armor market.

**1.      Defendants' False Statements were Material to Government Purchases.**

162.      Defendants' accessory panels were advertised and labeled in such a way as to lead law enforcement personnel and purchasers of accessory panels to falsely believe that the accessory panels offered the same level of IIIA, NIJ-Standard 0101.06, ballistic protection as the vests listed on the CPL. *See supra*, at Section V(D) and (E). As mentioned above, Relator's communications with law enforcement SWAT personnel revealed that these individuals believed that accessory panels offered the same level of IIIA ballistic protection as the panels in vests listed on the CPL. These beliefs were false.

**a.      Federal Agencies Require NIJ Standard-0101.06 Protection.**

163.      Federal agencies have required accessory panel products that were certified to NIJ Standard-0101.06 at Level IIIA—the same level of protection they required for purchases of the full-size vests. On information and belief, Federal agencies believed the body armor manufacturers' false representations on product labels, marketing materials and price lists that these products provided the same ballistics protection as full-size vests and were certified to NIJ Standard-0101.06, Level IIIA, were induced to request such products, and purchased Defendants' accessory panel products under that belief.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

164.     For example, on June 4, 2019, the U.S. Marshals Service published an Amendment of Solicitation/Modification of Contract specifying that the body armor the agency was going to purchase "must be a modular system allowing for the attachment of pouches or other elements to the vest. To include additional armor components such as neck, shoulder and groin protection.... Male Concealable Ballistic Panels NIJ Standard-0101.06 certified IIIA.... Female Concealable Ballistic Panels NIJ.... NIJ Standard-0101.06 certified IIIA."

        **b.**      **NASPO ValuePoint Master Agreement Requires NIJ Standard-0101.06 Protection.**

165.     Tactical body armor, including the accessory panels, are also included within a multistate master purchasing agreement sponsored by NASPO ValuePoint Cooperative Purchasing Program LLC. Participating entities in the purchasing program include the states or commonwealth of: Washington, Alaska, Arkansas, Arizona, California, Colorado, Delaware, Florida, Hawaii, Iowa, Idaho, Massachusetts, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Utah, Vermont, Wisconsin, and Wyoming. Sales data for 2014 shows purchases of body armor by the states listed above.  In addition to these purchases by states, the NASPO Master Agreement may be used generally by State governments, institutions of higher education, political subdivisions (colleges, school districts, counties, cities, etc.), the District of Columbia, territories of the United States and other eligible entities.

166.     NASPO's Body Armor Request for Proposal ("RFP"), RFP-NK-15-001, covers procurement for the 2016-2021 time period. The purpose of the agreement is to provide new body armor that meets the certification requirements of NIJ Standard-0101.06. The RFP specifies that "[a]cceptable [p]roducts are those that are published on the Compliant Products List (CPL)." The product category "Accessories" includes ballistic protectors for "[g]roin, yoke, bicep, collar and throat." According to the RFP, proposed body armor must meet NIJ Standard-0101.06, unless and until new NIJ Standards are published and made effective. Further, the RFP states that all body

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 57

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

armor shall be labeled with strict adherence to any applicable laws and regulations, including following the labelling requirements according to the NIJ Standards and guidance for NIJ Standard-0101.06.

167.    The NASPO RFP specifies that the "[o]fferor's proposed [p]roducts must be NIJ certified, if applicable, and be listed on the CPL."

168.    The body armor vendors that have been approved to provide tactical body armor pursuant to this RFP include Armor Express, GH Armor Systems, KDH Defense Systems, Point Blank and Safariland. The NASPO pricelists for Armor Express, GH Armor Systems (a Safariland company), KDH Defense Systems, Point Blank, and Safariland all offer accessory panels for sale, and state that they are certified to NIJ 0101.06 and/or threat level IIIA and reference CPL models. Above are excerpts from each of these product lists showing the defendant's logo and the false marketing of accessory panels offered for sale to government agencies. *See supra*, at Section V(E)(2)-(E)(5).

> c.    **State and Local Agencies Require NIJ Standard-0101.06 Protection in their Direct Purchases.**

169.    State and local law enforcement agencies also required accessory panel products that were certified to NIJ Standard-0101.06 at Level IIIA—the same level of protection required for the full-size vests. On information and belief, state and local agencies believed the body armor manufacturers' false representations on product labels, marketing materials and price lists that these products provided the same ballistics protection as full-size vests and were certified to NIJ Standard-0101.06, Level IIIA, were induced to request such products, and purchased Defendants' accessory panel products under that belief.

170.    For example:

A.    The City of Romulus, Michigan Police Department requested "formal quotes with unit pricing guaranteed for 90 days for: ....Tactical Vest with Quantum Level IIIa.06

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Ballistics, ….Shoulder Flanks with Integrated Ballistic Collar, Throat Protector, Groin Guard, Structured Deltoids & Sleeves, Nape Protector…."

      B.    Dekalb County, Georgia requested a quote for body armor and stated "[w]hen vest is fully configured it should include: 2 piece yoke and throat guard with NIJ 0101.06 soft armor; Bicep/deltoid upper arm protector with NIJ 0101.06 soft armor; Lower abdomen/groin protector with NIJ 0101.06 soft armor."

      C.    The City of San Bernardino California requested a body armor system utilizing "a ballistic package which is certified under National Institute of Justice Standard NIJ-STF-0101.06, Ballistic Resistance of Body Armor…Each individual base carrier armor system must come with the following detachable accessories: Project 7 throat protection; Project 7 upper arm protection; Project 7 groin/femoral artery protection."

      D.    The Commonwealth of Pennsylvania invited bids to cover the "Commonwealth's requirements for Concealable and Tactical Body Armor and accessories." "Classification shall be with the following Types (Threat Levels) Ballistic: IIA-IV….Armor must be in accordance with current Federal Standards for Ballistic Resistance of Body Armor NIJ Standard and Stab Resistance of Personal Body Armor NIJ Standard." A price list from KDH was submitted as a bid offering bicep/arm protectors, ballistic throat, ballistic collar, groin protectors and lower back protectors with NIJ Standard-0101.06 certification to threat level II or IIIA with corresponding CPL models. Similarly, a price list for Point Blank was submitted offering complete sets of body armor, including accessory pieces for Collar, Biceps, Throat, DF Lower Ext, Groin and DF Shoulder with corresponding CPL models and statements that the CPL models are NIJ 0101.06 certified.

      E.    New York state required "Soft Body Armor product lines [that] consist[] of vests and any accessories that may accompany vests . . . Certification: National Institute of Justice: Body Armor-Ballistic resistant: All ballistic-resistant vests and plates must carry the NIJ Standard-0101.06 July 2008 certification." Armor Express's price list was submitted offering collar, groin

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 59

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

guard, throat protector, sleeves set, and shoulder pads having Level IIIA protection. Similarly, the price list for Safariland was submitted offering NIJ 0101.06 Type IIIA collar, throat, upper arm, standard groin, and enhanced groin pieces for sale.

### 2. Federal Agencies Purchased and/or Subsidized the Purchases of Defendants' Falsely Labeled Accessory Panels.

171.    On information and belief, the Federal Government has purchased Defendants' falsely advertised and falsely labeled accessory panels for use by personnel in a variety of federal agencies and has provided reimbursement to State and local governments for their purchase of the same products. Similarly, on information and belief, State and local governments have purchased these same products. Defendants' products are falsely advertised and labeled as being NIJ Standard-0101.06 compliant, offering NIJ threat level IIIA protection, and being listed on the CPL, and they are offered for sale on various price lists and the Federal Supply Schedule as such.

172.    State and local governments also purchase body armor directly through the General Services Administration Schedule via the Federal Supply Schedule program which lists these accessory panel products for purchase, or through a competitive bid process managed by the state, or a purchasing consortium like NASPO.  On information and belief, many of the States' were reimbursed for these purchases by the Federal government.

### a. Federal Agencies Purchased Accessory Panels.

173.    Many Federal agencies have SWAT teams and purchase tactical gear, either through a competitive bid process or directly through the Federal Supply Schedule. Federal agencies with SWAT teams include the: Federal Bureau of Investigation ("FBI"); Office of the Secretary of Defense (including, but not limited to, the U.S. Pentagon Police); U.S. Customs and Border Protection; U.S. Department of Homeland Security (including, but not limited to, the Federal Air Marshal Service, the U.S. Immigration and Customs Enforcement, the U.S. Coast Guard, and the U.S. Secret Service); U.S. Department of the Interior (including, but not limited to, the Bureau of Indian Affairs, the Bureau of Land Management, and U.S. Fish and Wildlife Service); U.S. Department of Justice (including, but not limited to, the Federal Bureau of Prisons,

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 60

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   the U.S. Drug Enforcement Administration, and the U.S. Marshals Service); U.S. National Park

2   Service (including, but not limited to, the U.S. Park Police); U.S. Department of Agriculture; U.S.

3   Railroad Retirement Board; Tennessee Valley Authority; Office of Personnel Management; U.S.

4   Consumer Product Safety Commission; U.S. Department of Education; and U.S. Department of

5   Health and Human Services (including the Food and Drug Administration).

6       174.    The General Services Administration ("GSA") is an agency of the Federal

7   Government with responsibility for administering the Multiple Award Schedule ("MAS")

8   contracting program (also known as the Federal Supply Schedule program, "FSS"). The FSS is a

9   government-wide contract program for selling commercial products, services, and solutions. As

10  set forth above, on GSA website, gsaadvantage.gov, Defendants provide product descriptions to

11  government buyers of these products that reference NIJ Standard 0101.06, threat level IIIA, or

12  reference certified NIJ CPL models, thereby representing to the purchasers that the products

13  manufactured by Defendants and sold and shipped by the Defendants, or their distributors and

14  third party sellers, satisfy NIJ Standard-0101.06.

15      175.    Armor Express, KDH, and Point Blank have authorized FSS Price Lists for their

16  body armor contracts.

17      176.    On information and belief, Defendants prepared and provided the product

18  descriptions on the GSA Advantage! website containing the false representations with references

19  to "NIJ Standard-0101.06," "0101.06" "101.06" and/or "IIIA" and the CPL models when they sold

20  the products directly to government buyers. To the extent the products are sold by Defendants'

21  distributors or third party sellers, Defendants provide such descriptions to the distributors and third

22  party sellers and are therefore responsible for false representations that their distributors and third

23  party sellers make about the products offered for sale on the GSA Advantage! website.

24      177.    On information and belief, Federal agencies and state and local governments use

25  the FSS to purchase accessory panels that were manufactured by Defendants and sold by their

26  distributors and/or third party sellers under Contract Nos. GS-07F-8799D, GS-07F-9029D

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 61

(Protective Products Enterprises or Point Blank); GS-07F-153T (Armor Express); GS-07F-0249T (KDH) and others.

178.     On information and belief, Federal agencies and state and local governments rely on the product descriptions, labels and advertising provided by Defendants to make direct purchases and also to make purchases through the GSA website and the level of ballistic protection (IIIA), NIJ certification to NIJ Standard-0101.06, and references to the NIJ CPL models are material to their purchases.

179.     Prior to or after purchase, the sellers of these products submitted invoices to the government agencies seeking payment for these products. The Federal, State and local government agencies paid these invoices or subsidized these purchases.

180.     By submitting invoices to the government agencies making these purchases, or by selling these products through their distributors and third party sellers to government agencies on the GSA Advantage! website, Defendants knowingly caused these invoices for false claims to be presented to the government.

**b.     Federal Reimbursement Program Funds Were Used to Reimburse State and Local Governments for Their Accessory Panel Purchases.**

181.     Most tactical gear is purchased for use by state and local law enforcement agencies. The Federal government is often involved in such purchases of tactical gear under the Bulletproof Vest Partnership ("BVP") Program administered by NIJ that subsidizes fifty percent (50%) of the purchase of ballistics armor by state and local governments. The Federal government is also involved through other reimbursement programs including the Edward Byrne Memorial Justice Assistance Grant program and Federal Emergency Management Agency ("FEMA") grants, such as the Urban Area Security Initiative Program. These and all other programs under which the federal government reimburses State and local governments for body armor and accessory panel purchases, as well as all programs under which the federal government provides any other type of

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

monetary support to allow State and local governments to purchase body armor and accessory panels, will hereinafter be referred to as "Federal Reimbursement Programs."

182.     Under the BVP Program, reimbursement for SWAT vests are allowed if they will be used as the officer's primary vest, are necessary for the proper fitting and wearing of the vest, or directly impact the protection of the officer. On information and belief, state and local law enforcement agencies could make applications for reimbursement of purchases of tactical accessories by making an application for reimbursement of purchase of tactical vests listed on the CPL that also include the "complete set" with accessory panels. Through the BVP program, state and local governments are able to make purchases of tactical body armor listed on the CPL, including products manufactured by Defendants and then seek reimbursement for the cost of the purchase of the tactical body armor from the BVP program and other federal grant programs.

183.     The Bulletproof Vest Partnership Grant Program Reauthorization Act of 2015, reauthorized in 2016, provided for $25 million dollars for each of the fiscal years 2016 through 2020. From 2012-2018, the BVP program provided grants to city and county governments in every state, totaling $138,727,556.21.

184.     As set forth above, Federal grant programs that provide reimbursement to state and local governments for purchases of tactical body armor include the Edward Byrne Memorial Justice Assistance Grant, and Department of Homeland Security and/or FEMA grants. Requirements for reimbursement of these products require that armor purchased with grant funds be on the NIJ CPL. These federal grant programs are used by State and local governments to purchase accessory panel products.

185.     On information and belief, State and local governments rely on the product descriptions, labels and advertising provided by Defendants to make these purchases, and the level of ballistic protection (IIIA), NIJ certification to NIJ-Standard 0101.06, and reference to the NIJ CPL models are material to their purchases of these products.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 63

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

186.     Prior to or after purchase, the sellers of these products submitted invoices to the State and local government agencies seeking payment for these products. The State and local government agencies paid these invoices.

187.     By submitting invoices to the government agencies making these purchases, who in turn submitted reimbursement requests to the Federal Reimbursement Programs, Defendants knowingly caused these invoices for false claims to be presented to the government.

188.     On information and belief, many of the States participating in the NASPO Cooperative Purchasing Program that have purchased body armor, and many of the Federal Reimbursement Program recipients that have purchased body armor, also have purchased accessory panels to attach to their purchases of tactical vests and carriers.

**3.     State and Local Agencies Purchased Defendants' Falsely Labeled Accessory Panels.**

189.     On information and belief, many state and local agencies have purchased Defendants' falsely labeled accessory panels. The information below is illustrative only and is not intended to be a complete list of state and local government purchases.

**a.     California**

190.     California has purchased Defendants' falsely labeled accessory panels.

191.     From 2012 to 2018, California was awarded $11,950,681.48 from the BVP program described above.

192.     In 2014, California spent $8,134 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors. The City of Mountain View, California has signed a NASPO participating addendum contract with KDH.

193.     Publicly available information confirms that California and various state agencies have purchased body armor from Armor Express, FirstSpear, Point Blank, and Safariland. On information and belief and because several of these contracts were specifically for SWAT units, these purchases included accessory panels.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 64

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

           **b.**    **Delaware**

2

194.       Delaware has purchased Defendants' falsely labeled accessory panels.

3

195.       From 2012 to 2018, Delaware was awarded $549,134.73 from the BVP program

4

described above.

5

196.       In 2014, Delaware spent $570,852 on body armor through the NASPO body armor

6

purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as

7

contractors.

8

197.       Delaware has entered into a contract for body armor with Armor Express, Point

9

Blank, and Safariland.

10

198.       Publicly available information confirms that in 2015 and 2016, various Delaware

11

agencies purchased ballistic vests with accessory panels, including bicep, groin, neck, and yoke

12

panels from Point Blank.

13

           **c.**    **District of Columbia**

14

199.       The District of Columbia has purchased Defendants' falsely labeled accessory

15

panels.

16

200.       From 2012 to 2018, the District of Columbia was awarded $139,390.99 from the

17

BVP program described above.

18

201.       The District of Columbia has signed a NASPO participating addendum contract

19

with Point Blank.

20

202.       Publicly available information confirms that District of Columbia has purchased

21

body armor for Washington DC Metro SWAT from Point Blank. On information and belief, this

22

purchase included the accessory panels that typically accompany body armor sets for SWAT units.

23

           **d.**    **Florida**

24

203.       Florida has purchased Defendants' falsely labeled accessory panels.

25

204.       From 2012 to 2018, Florida was awarded $7,117,642.71 from the BVP program

26

described above.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

205.     In 2014, Florida spent $51,551 on body armor through the NASPO body armor purchasing for which Armor Express, KDH, Point Blank, and Safariland act as contractors. Florida has signed NASPO participating addenda contracts with Armor Express, KDH, Point Blank, and Safariland.

206.     Publicly available information confirms that various Florida agencies have purchased body armor from Armor Express and Point Blank, which, on information and belief, included accessory panels.

**e.     Illinois**

207.     Illinois has purchased Defendants' falsely labeled accessory panels.

208.     From 2012 to 2018, Illinois was awarded $6,216,627.86 from the BVP program described above.

209.     Publicly available information confirms that Illinois agencies have purchased body armor and accessories from KDH and Point Blank.

**f.     Iowa**

210.     Iowa has purchased Defendants' falsely labeled accessory panels.

211.     From 2012 to 2018, Iowa was awarded $1,281,183.81 from the BVP program described above.

212.     In 2014, Iowa spent $128,617 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors. The State of Iowa has signed NASPO participating addenda contracts with Armor Express, Point Blank, and Safariland.

213.     Publicly available information confirms that Iowa has purchased body armor with accessory panels from Armor Express.

**g.     Maryland**

214.     Maryland has purchased Defendants' falsely labeled accessory panels.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

215.     From 2012 to 2018, Maryland was awarded $1,437,225.31 from the BVP program described above.

216.     Publicly available information confirms that the Maryland State Police SWAT team purchased body armor from Point Blank and another agency has purchased Safariland brand SWAT body armor, which, on information and belief, includes accessory panels.

**h.     Massachusetts**

217.     Massachusetts has purchased Defendants' falsely labeled accessory panels.

218.     From 2012 to 2018, Massachusetts was awarded $5,984,823.54 from the BVP program described above.

219.     In 2014, Massachusetts spent $15,950 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors.

220.     Publicly available information confirms that various Massachusetts SWAT teams have purchased body armor from Point Blank, which, on information and belief, includes the purchase of accessory panels.

**i.     Minnesota**

221.     Minnesota has purchased Defendants' falsely labeled accessory panels.

222.     From 2012 to 2018, Minnesota was awarded $3,349,087.70 from the BVP program described above.

223.     In 2014, Minnesota spent $889,469 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors. Minnesota has signed NASPO participating addenda contracts with Armor Express, KDH, Point Blank, and Safariland.

224.     Publicly available information confirms that the Minnesota Bureau of Criminal Apprehension purchased body armor from Armor Express, which, on information and belief, includes the purchase of accessory panels.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 67

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

          **j.**     **Montana**

2

225.      Montana has purchased Defendants' falsely labeled accessory panels.

3

226.      From 2012 to 2018, Montana was awarded $684,877.36 from the BVP program

4

described above.

5

227.      In 2014, Montana spent $64,793 on body armor through the NASPO body armor

6

purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as

7

contractors. Montana has signed NASPO participating addenda contracts with Armor Express,

8

KDH, Point Blank, and Safariland.

9

228.      Publicly available information confirms that various Montana agencies have

10

purchased body armor for tactical teams, which, on information and belief, includes the purchases

11

of accessory panels.

12

          **k.**     **New Jersey**

13

229.      New Jersey has purchased Defendants' falsely labeled accessory panels.

14

230.      From 2012 to 2018, New Jersey was awarded $7,828,866.23 from the BVP

15

program described above.

16

231.      Publicly available information confirms that various New Jersey agencies have

17

purchased body armor for SWAT teams and body armor with accessories from Armor Express,

18

KDH, and Point Blank.

19

          **l.**     **New Mexico**

20

232.      New Mexico has purchased Defendants' falsely labeled accessory panels.

21

233.      From 2012 to 2018, New Mexico was awarded $951,248.87 from the BVP program

22

described above.

23

234.      In 2014, New Mexico spent $7,284 on body armor through the NASPO body armor

24

purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as

25

contractors. New Mexico has signed NASPO participating addenda contracts with Armor Express,

26

KDH, Point Blank, and Safariland.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

235.     Publicly available information confirms that New Mexico has purchased body armor and accessory panels from Safariland.

        **m.     New York**

236.     New York has purchased Defendants' falsely labeled accessory panels.

237.     New York has entered into contracts with Armor Express, KDH, Point Blank, and Safariland.

238.     From 2012 to 2018, New York was awarded $6,210,225.29 from the BVP program described above.

239.     In 2014, New York spent $339,337 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors.

240.     Publicly available information confirms that various New York SWAT teams have purchased body armor from Point Blank, which, on information and belief, includes the purchase of accessory panels.

241.     In 2016, the New York City Police Department announced that it would spend $7.5 million to buy 6,000 heavy ballistic vests and 20,000 ballistic helmets for its officers. The news article does not specifically mention accessories, but on information and belief, the department likely also purchased accessories to accompany these vests because the purchase was designed to allow officers to handle particularly dangerous situations that are typically under the purview of SWAT teams, such as mass shooters and terror attacks. On information and belief, this purchase was made from at least one of the Defendants.

        **n.     Rhode Island**

242.     Rhode Island has purchased Defendants' falsely labeled accessory panels.

243.     Rhode Island has signed NASPO participating addenda contracts with Point Blank and Safariland.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

244.     From 2012 to 2018, Rhode Island was awarded $831,815.94 from the BVP program described above.

245.     Rhode Island law enforcement agencies typically receive about $100,000 annually in federal BVP funds to help local police departments and law enforcement agencies purchase body armor vests. In the past several years, communities benefitting from the program include: Bristol, Burrillville, Central Falls, Charlestown, Coventry, Cumberland, East Providence, Glocester, Jamestown, Johnston, Lincoln, Middletown, Newport, North Kingstown, North Providence, Pawtucket, Providence, Richmond, South Kingstown, Smithfield, Tiverton, Warwick, West Greenwich, and West Warwick. On information and belief, at least some of these purchases were for accessory panels.

### o.     Virginia

246.     Virginia has purchased Defendants' falsely labeled accessory panels.

247.     From 2012 to 2018, Virginia was awarded $3,291,929.18 from the BVP program described above.

248.     In 2017, the County of Stafford in Virginia was awarded $29,377 from the federal Edward Byrne Memorial Justice Assistance Grant program to purchase body armor for its SWAT team. On information and belief and because SWAT body armor typically includes accessory panels, this purchase included accessory panels.

249.     Publicly available information confirms that Virginia has entered into a contract for Point Blank's "Alpha-1 Complete Set" which includes "Collar, Throat, Premium Biceps, and Groin Protection" for $2,436.48 each.

### p.     Washington

250.     Washington has purchased Defendants' falsely labeled accessory panels.

251.     Washington has contracts for body armor with Armor Express, KDH, Point Blank, and Safariland.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 70

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

252.     From 2012 to 2018, Washington was awarded $2,731,320.46 from the BVP program described above.

253.     In 2014, Washington spent $1,446,168 on body armor through the NASPO body armor purchasing agreement for which Armor Express, KDH, Point Blank, and Safariland act as contractors.

254.     The Bellingham Police Department SWAT Team, located in the Western District of Washington, purchased the Alpha Elite ballistic system from Point Blank. Because accessory panels are typically used by and purchased for SWAT units, on information and belief, this purchase included accessory panels.

255.     In 2017, the city of Bellingham and Whatcom County, both located in the Western District of Washington, agreed to spend $35,941 on body armor to purchase specialized body armor for their SWAT units. Because accessory panels are typically used by and purchased for SWAT units, on information and belief, this purchase included accessory panels. These Washington State entities applied for funding from the federal government to make this purchase through the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program. In the Byrne JAG program narrative prepared by these Washington State entities, they reported that the body armor was "NIJ certified and met the current .06 Level IIIA standards of protection."

256.     In 2019, King County, Washington entered into a contract to purchase plate carriers and accessories from FirstSpear. The contract had an estimated value of $100,000.

257.     Federal records also confirm that Washington State entities have received federal reimbursements for the purchase of body armor.

258.     Each of the Defendants does business in the Western District of Washington and Defendants intentionally avail themselves of the markets in this state through the promotion, marketing, and sale of the body armor products at issue in this lawsuit.

259.     Upon information and belief and in light of the foregoing, because Washington has been awarded substantial sums from Federal Reimbursement Programs for the purchase of body

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 71

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

armor, and because Washington made purchases pursuant to the NASPO agreement in 2014 for which Armor Express, KDH, Point Blank, and Safariland are contractors, FirstSpear collaborates with Point Blank and Safariland, and King County has purchased accessories from FirstSpear, Washington has purchased accessory panels from all Defendants.

## VI.   CAUSES OF ACTION

### COUNT ONE — VIOLATIONS OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)(A)
### (As to All Defendants)

260.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

261.     Relator brings these claims against Defendants on behalf of the United States for treble damages and penalties under the FCA, 31 U.S.C. § 3729(a)(1)(A), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

262.     Specifically, Defendants presented or caused to be presented claims for payment or approval to the United States for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

263.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to the United States for purchases made pursuant to Federal Reimbursement Programs for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

264.     Moreover, on information and belief, Defendants presented or caused to be presented additional false or fraudulent claims to the United States for direct purchases from Defendants, outside of the GSA website or contract, for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

265.    Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

266.    All of these claims were knowingly false or fraudulent claims under the FCA.

267.    As a direct and proximate result of the Defendants' violations of the FCA, 31 U.S.C. § 3729(a)(1)(A), the United States has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

268.    Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding the United States damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the FCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT TWO — VIOLATIONS OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)(B)
### (As to All Defendants)

269.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 73

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

270.    Relator brings these claims against Defendants on behalf of the United States for treble damages and penalties under the FCA, 31 U.S.C. § 3729(a)(1)(B), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

271.    Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to the United States for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

272.    Additionally, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to the United States for purchases made under Federal Reimbursement Programs for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

273.    Moreover, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to the United States for purchases outside of the GSA contract for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

274.    Defendants' false records and/or statements included, but were not limited to: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely reporting or stating that Defendants

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

275.     All of these records and/or statements were knowingly false under the FCA.

276.     On information and belief, these false records and/or statements led the United States to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. The United States typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, the United States would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendants for such products.  Defendants' false records and/or statements were therefore material to their false claims.

277.     As a direct and proximate result of the Defendants' violations of the FCA, 31 U.S.C. § 3729(a)(1)(B), the United States has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

278.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding the United States damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the FCA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THREE — VIOLATIONS OF THE CALIFORNIA
FALSE CLAIMS ACT
CAL. GOV'T CODE § 12651(a)(1)
(As to Defendants Point Blank, Armor Express, KDH, and Safariland)**

279.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

280.     Relator brings these claims against Defendants on behalf of California for treble damages and penalties under the CFCA, Cal. Gov't Code § 12651(a)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

281.     Specifically, on information and belief, Defendants presented or caused to be presented claims for payment or approval to California for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

282.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to California for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

283.     Moreover, on information and belief, Defendants presented or caused to be presented claims for payment or approval to California for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

284.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

285.     All of these claims were knowingly false or fraudulent claims under the CFCA.

286.     As a direct and proximate result of the Defendants' violations of the CFCA, Cal. Gov't Code § 12651(a)(1), California has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

287.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding California damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the CFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT FOUR — VIOLATIONS OF THE CALIFORNIA
### FALSE CLAIMS ACT
### CAL. GOV'T CODE § 12651(a)(2)
**(As to Defendants Point Blank, Armor Express, KDH, and Safariland)**

288.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

289.     Relator brings these claims against Defendants on behalf of California for treble damages and penalties under the CFCA, Cal. Gov't Code § 12651(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 77

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

290.     Specifically, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to California for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

291.     Additionally, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to California for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

292.     Moreover, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to California for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

293.     Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

294.     All of these records and/or statements were knowingly false under the CFCA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

295.     These false records and/or statements led California to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. California typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, California would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendants for such products. Defendants' false records and/or statements were therefore material to their false claims.

296.     As a direct and proximate result of the Defendants' violations of the CFCA, Cal. Gov't Code § 12651(a)(2), California has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

297.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding California damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the CFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT FIVE — VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT
### CAL. GOV'T CODE § 12651(a)(8)
### (As to Defendants Point Blank, Armor Express, KDH, and Safariland)

298.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

299.     Alternatively, Relator brings these claims against Defendants on behalf of California for treble damages and penalties under the CFCA, Cal. Gov't Code § 12651(a)(8), for being the beneficiaries of inadvertent submissions of false claims who subsequently discovered

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 79

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the falsity of the claims and failed to disclose the false claim to the state or political subdivision within a reasonable time after discovery of the false claim.

300.    Specifically, on information and belief, Defendants were the beneficiaries of false claims to California under the GSA Federal Supply Schedule for body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

301.    Additionally, on information and belief, Defendants were the beneficiaries of false claims to California under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

302.    Moreover, on information and belief, Defendants were the beneficiaries of false claims to California for other purchases of body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

303.    These claims were false in that the accessory panels were falsely labeled and marketed by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

304.    On information and belief, Defendants subsequently discovered the prior false labeling and marketing of their accessory panels. For example, in or around 2016 Point Blank

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 80

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

made changes to its accessory panel labels, and, in or around November 2018 NIJ issued an Administrative Clarification stating that accessory panels were not authorized to display the NIJ mark.

305.    On information and belief, Defendants did not disclose the prior false claims to California or any of its political subdivisions within a reasonable amount of time after their discovery of the false claims and still have not disclosed the prior false claims.

306.    As a direct and proximate result of the Defendants' violations of the CFCA, Cal. Gov't Code § 12651(a)(8), California has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

307.    Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding California damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the CFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT SIX — VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT DEL. CODE ANN.  tit. 6, § 1201(a)(1) (As to Defendant Point Blank)

308.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

309.    Relator brings these claims against Defendant on behalf of Delaware for treble damages and penalties under the DFCRA, Del. Code Ann. tit. 6, § 1201(a)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

310.    Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Delaware under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 81

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

311.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Delaware under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

312.     Moreover, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Delaware for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

313.     Defendant falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

314.     All of these claims were knowingly false or fraudulent claims under the DFCRA.

315.     As a direct and proximate result of the Defendant's violations of the DFCRA, Del. Code Ann. tit. 6, § 1201(a)(1), Delaware has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

316.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Delaware damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the DFCRA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT SEVEN — VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT DEL. CODE ANN. tit. 6, § 1201(a)(2) (As to Defendant Point Blank)

317.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

318.     Relator brings these claims against Defendant on behalf of Delaware for treble damages and penalties under the DFCRA, Del. Code Ann. tit. 6, § 1201(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

319.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Delaware for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

320.     Additionally, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Delaware for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and

2    providing NIJ threat level IIIA protection.

3    321.    Moreover, on information and belief, Defendant made or caused to be made false

4    records and/or statements material to false or fraudulent claims to Delaware for other purchases of

5    body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately

6    ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-

7    0101.06 and providing NIJ threat level IIIA protection.

8    322.    Defendant's false records and/or statements included labeling and marketing

9    materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not

10   and does not certify accessory panels; (2) claiming that the accessory panels were listed on the

11   Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their

12   accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant

13   with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements

14   agreed to by Defendant when they entered their Compliance Testing Program ("CTP")

15   agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection

16   when in fact these products could not pass testing according to NIJ Standard-0101.06.

17   323.    All of these records and/or statements were knowingly false under the DFCRA.

18   324.    These false records and/or statements led Delaware to believe that the Defendant's

19   accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set

20   forth in the NIJ Standard-0101.06 in testing. Delaware typically requires the body armor products

21   it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the

22   NIJ Standard-0101.06 in testing. On information and belief, Delaware would not have purchased

23   body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not

24   meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would

25   not have paid the price charged by Defendant for such products. Defendant's false records and/or

26   statements were therefore material to their false claims.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 84

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

325.     As a direct and proximate result of the Defendant's violations of the DFCRA, Del. Code Ann. tit. 6, § 1201(a)(2), Delaware has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

326.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Delaware damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the DFCRA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT EIGHT — VIOLATIONS OF THE DISTRICT OF COLUMBIA FALSE CLAIMS ACT
### D.C. Code § 2-381.02(a)(1)
### (As to Defendant Point Blank)

327.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

328.     Relator brings these claims against Defendant on behalf of the District of Columbia for treble damages and penalties under the DCFCA, D.C. Code § 2-381.02(a)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

329.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to the District of Columbia for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

330.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to the District of Columbia for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or

1    fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ
2    threat level IIIA protection.

3        331.    Defendant falsely labeled and marketed its accessory panels by: (1) falsely claiming
4    that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify
5    accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant
6    Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its
7    accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards
8    when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant
9    when it entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming
10   that the accessory panels offered NIJ threat level IIIA protection when in fact these products could
11   not pass testing according to NIJ Standard-0101.06.

12       332.    All of these claims were knowingly false or fraudulent claims under the DCFCA.

13       333.    As a direct and proximate result of the Defendant's violations of the DCFCA, D.C.
14   Code § 2-381.02(a)(1), the District of Columbia has sustained damages in an amount to be
15   determined at trial and is entitled to damages plus a civil penalty for each violation.

16       334.    Relator respectfully requests the Court enter judgment against the Defendant as
17   follows: (1) awarding the District of Columbia damages in an amount required by law; (2)
18   imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses
19   that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator
20   the maximum amount allowed to them pursuant to the DCFCA; and (5) entering any such other
21   order and further relief as this Court deems proper.

**COUNT NINE — VIOLATIONS OF THE DISTRICT OF COLUMBIA
FALSE CLAIMS ACT
D.C. CODE § 2-381.02(a)(2)
(As to Defendant Point Blank)**

25       335.    Relator re-alleges and incorporates by reference the prior paragraphs as though
26   fully set forth herein.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 86

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

336.     Relator brings these claims against Defendant on behalf of the District of Columbia for treble damages and penalties under the DCFCA, D.C. Code § 2-381-02(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

337.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to the District of Columbia for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

338.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to the District of Columbia for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

339.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

340.     All of these records and/or statements were knowingly false under the DCFCA.

341.     These false records and/or statements led the District of Columbia to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 87

minimum standards set forth in the NIJ Standard-0101.06 in testing. The District of Columbia typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, the District of Columbia would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

342.     As a direct and proximate result of the Defendant's violations of the DCFCA, D.C. Code § 2-381-02(a)(2), the District of Columbia has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

343.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding the District of Columbia damages in an amount required by law; (2) imposing civil penalties as are required by law;          (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the DCFCA; and (5) entering any such other order and further relief as this Court deems proper.

### COUNT TEN — VIOLATIONS OF THE DISTRICT OF COLUMBIA
### FALSE CLAIMS ACT
### D.C. CODE § 2-381.02(a)(8)
### (As to Defendant Point Blank)

344.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

345.     Alternatively, Relator brings these claims against Defendant on behalf of the District of Columbia for treble damages and penalties under the DCFCA, D.C. Code § 2-381-021201(a)(8), for being a beneficiary of inadvertent submissions of false claims who subsequently

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    discovered the falsity of the claims and failed to disclose the false claim to the state or political

2    subdivision within a reasonable time after discovery of the false claim.

3        346.    Specifically, on information and belief, Defendant was the beneficiary of false

4    claims to District of Columbia for purchases made under the GSA Federal Supply Schedule for

5    body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ

6    Standard-0101.06 and providing NIJ threat level IIIA protection.

7        347.    Additionally, on information and belief, Defendant was the beneficiary of false

8    claims to the District of Columbia for other purchases of body armor accessory panels which were

9    falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat

10    level IIIA protection.

11        348.    These claims were false in that the accessory panels were falsely labeled and

12    marketed by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ

13    did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were

14    listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other

15    products applied to the accessory panels in marketing and labeling; (4) falsely claiming to be

16    compliant with NIJ standards when in fact the labeling and marketing violated NIJ labeling

17    requirements agreed to by Defendant when they entered their Compliance Testing Program

18    ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level

19    IIIA protection when in fact these products could not pass testing according to NIJ Standard-

20    0101.06.

21        349.    On information and belief, Defendant subsequently discovered the prior false

22    labeling and marketing of its accessory panels. For example, in or around 2016 Point Blank made

23    changes to its accessory panel labels, and, in or around November 2018 NIJ issued an

24    Administrative Clarification stating that accessory panels were not authorized to display the NIJ

25    mark.

26

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 89

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

350.     On information and belief, Defendant did not disclose the prior false claims to the District of Columbia within a reasonable amount of time after their discovery of the false claims and still has not disclosed the prior false claims.

351.     As a direct and proximate result of the Defendant's violations of the DCFCA, D.C. Code § 2-381-02(a)(8), the District of Columbia has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

352.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding the District of Columbia damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the DCFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT ELEVEN — VIOLATIONS OF THE FLORIDA
### FALSE CLAIMS ACT
### FLA. STAT. § 68.082(2)(a)
### (As to Defendants Point Blank and Armor Express)

353.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

354.     Relator brings these claims against Defendants on behalf of Florida for treble damages and penalties under the FFCA, Fla. Stat. § 68.082(2)(a), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

355.     Specifically, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Florida for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

356.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Florida for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

357.     Moreover, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Florida for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

358.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

359.     All of these claims were knowingly false or fraudulent claims under the FFCA.

360.     As a direct and proximate result of the Defendants' violations of the FFCA, Fla. Stat. § 68.082(2)(a), Florida has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

361.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Florida damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 91

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the FFCA; and (5) entering any such other order and further relief as this Court deems proper.

**COUNT TWELVE — VIOLATIONS OF THE FLORIDA
FALSE CLAIMS ACT
FLA. STAT. § 68.082(2)(b)
(As to Defendants Point Blank and Armor Express)**

362.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

363.     Relator brings these claims against Defendants on behalf of Florida for treble damages and penalties under the FFCA, Fla. Stat. § 68.082(2)(b), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

364.     Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Florida for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

365.     Additionally, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Florida for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

366.     Moreover, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to Florida for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-

2    0101.06 and providing NIJ threat level IIIA protection.

3        367.    Defendants' false records and/or statements included labeling and marketing

4    materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not

5    and does not certify accessory panels; (2) claiming that the accessory panels were listed on the

6    Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their

7    accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant

8    with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements

9    agreed to by Defendants when they entered their Compliance Testing Program ("CTP")

10   agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection

11   when in fact these products could not pass testing according to NIJ Standard-0101.06.

12       368.    All of these records and/or statements were knowingly false under the FFCA.

13       369.    These false records and/or statements led Florida to believe that the Defendants'

14   accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set

15   forth in the NIJ Standard-0101.06 in testing. Florida typically requires the body armor products it

16   purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the

17   NIJ Standard-0101.06 in testing. On information and belief, Florida would not have purchased

18   body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not

19   meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would

20   not have paid the price charged by Defendants for such products. Defendants' false records and/or

21   statements were therefore material to their false claims.

22       370.    As a direct and proximate result of the Defendants' violations of the FFCA, Fla.

23   Stat. § 68.082(2)(b), Florida has sustained damages in an amount to be determined at trial and is

24   entitled to damages plus a civil penalty for each violation.

25       371.    Relator respectfully requests the Court enter judgment against the Defendants as

26   follows: (1) awarding Florida damages in an amount required by law; (2) imposing civil penalties

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 93

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the FFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT THIRTEEN — VIOLATIONS OF THE ILLINOIS FALSE CLAIMS ACT
### 740 ILL. COMP. STAT. 175/3(a)(1)(A)
### (As to Defendants Point Blank and KDH)

372.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

373.    Relator brings these claims against Defendants on behalf of Illinois for treble damages and penalties under the Illinois FCA, 740 Ill. Comp. Stat. 175/3(a)(1)(A), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

374.    Specifically, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Illinois for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

375.    Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Illinois for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

376.    Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 94

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

377.    All of these claims were knowingly false or fraudulent claims under the Illinois FCA.

378.    As a direct and proximate result of the Defendants' violations of the Illinois FCA, 740 Ill. Comp. Stat. 175/3(a)(1)(A), Illinois has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

379.    Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Illinois damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Illinois FCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT FOURTEEN — VIOLATIONS OF THE ILLINOIS
### FALSE CLAIMS ACT
### 740 ILL. COMP. STAT. 175/3(a)(1)(B)
### (As to Defendants Point Blank and KDH)

380.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

381.    Relator brings these claims against Defendants on behalf of Illinois for treble damages and penalties under the Illinois FCA, 740 Ill. Comp. Stat. 175/3(a)(1)(B), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 95

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

382.    Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Illinois for purchases made through the General Services Administration Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

383.    Additionally, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to Illinois for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

384.    Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

385.    All of these records and/or statements were knowingly false under the FFCA.

386.    These false records and/or statements led Illinois to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Illinois typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Illinois would not have purchased

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 96

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendants for such products. Defendants' false records and/or statements were therefore material to their false claims.

387.     As a direct and proximate result of the Defendants' violations of the Illinois FCA, 740 Ill. Comp. Stat. 175/3(a)(1)(B), Illinois has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

388.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Illinois damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Illinois FCA; and (5) entering any such other order and further relief as this Court deems proper.

**COUNT FIFTEEN — VIOLATIONS OF THE IOWA<br>FALSE CLAIMS ACT<br>IOWA CODE § 685.2(1)(a)<br>(As to Defendant Armor Express)**

389.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

390.     Relator brings these claims against Defendant on behalf of Iowa for treble damages and penalties under the Iowa FCA, Iowa Code § 685.2(1)(a), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

391.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Iowa for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

**KELLER ROHRBACK L.L.P.**<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052<br>TELEPHONE: (206) 623-1900<br>FACSIMILE: (206) 623-3384

392.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Iowa for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

393.     Moreover, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Iowa for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

394.     Defendant falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

395.     All of these claims were knowingly false or fraudulent claims under the Iowa FCA.

396.     As a direct and proximate result of the Defendant's violations of the Iowa FCA, Iowa Code § 685.2(1)(a), Iowa has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

397.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Iowa damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 98

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount

2    allowed to them pursuant to the Iowa FCA; and (5) entering any such other order and further relief

3    as this Court deems proper.

**COUNT SIXTEEN — VIOLATIONS OF THE IOWA
FALSE CLAIMS ACT
IOWA CODE § 685.2(1)(b)
(As to Defendant Armor Express)**

7    398.    Relator re-alleges and incorporates by reference the prior paragraphs as though

8    fully set forth herein.

9    399.    Relator brings these claims against Defendant on behalf of Iowa for treble damages

10   and penalties under the Iowa FCA, Iowa Code § 685.2(1)(b), for knowingly making, using, or

11   causing to be made or used false records and/or statements material to false or fraudulent claims.

12   400.    Specifically, on information and belief, Defendant made, used, or caused to be

13   made or used false records and/or statements material to false or fraudulent claims to Iowa for

14   purchases made under the GSA Federal Supply Schedule for body armor accessory panels which

15   Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently

16   marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level

17   IIIA protection.

18   401.    Additionally, on information and belief, Defendant made, used, or caused to be

19   made or used false records and/or statements material to false or fraudulent claims to Iowa for

20   purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor

21   accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were

22   falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and

23   providing NIJ threat level IIIA protection.

24   402.    Moreover, on information and belief, Defendant made or caused to be made false

25   records and/or statements material to false or fraudulent claims to Iowa for other purchases of body

26   armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

403.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

404.     All of these records and/or statements were knowingly false under the Iowa FCA.

405.     These false records and/or statements led Iowa to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Iowa typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Iowa would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

406.     As a direct and proximate result of the Defendant's violations of the Iowa FCA, Iowa Code § 685.2(1)(b), Iowa has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

407.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Iowa damages in an amount required by law; (2) imposing civil penalties as

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 100

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily

2    incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount

3    allowed to them pursuant to the Iowa FCA; and (5) entering any such other order and further relief

4    as this Court deems proper.

**COUNT SEVENTEEN — VIOLATIONS OF THE MARYLAND**
**FALSE CLAIMS ACT**
**MD. CODE ANN., GEN. PROVIS. § 8-102(b)(1)**
**(As to Defendants Point Blank and Safariland)**

8    408.    Relator re-alleges and incorporates by reference the prior paragraphs as though

9    fully set forth herein.

10    409.    Relator brings these claims against Defendants on behalf of Maryland for treble

11    damages and penalties under the Maryland FCA, Md. Code Ann., Gen. Provis. § 8-102(b)(1), for

12    knowingly presenting or causing to be presented false or fraudulent claims for payment or

13    approval.

14    410.    Specifically, on information and belief, Defendants presented or caused to be

15    presented claims for payment or approval to Maryland for purchases made under the GSA Federal

16    Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded,

17    or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ

18    Standard-0101.06 and providing NIJ threat level IIIA protection.

19    411.    Additionally, on information and belief, Defendants presented or caused to be

20    presented claims for payment or approval to Maryland for other purchases of body armor accessory

21    panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or

22    fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ

23    threat level IIIA protection.

24    412.    Defendants falsely labeled and marketed their accessory panels by: (1) falsely

25    claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not

26    certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 101

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

413.     All of these claims were knowingly false or fraudulent claims under the Maryland FCA.

414.     As a direct and proximate result of the Defendants' violations of the Maryland FCA, Md. Code Ann., Gen. Provis. § 8-102(b)(1), Maryland has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

415.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Maryland damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Maryland FCA; and (5) entering any such other order and further relief as this Court deems proper.

**COUNT EIGHTEEN — VIOLATIONS OF THE MARYLAND**
**FALSE CLAIMS ACT**
**MD. CODE ANN., GEN. PROVIS. § 8-102(b)(2)**
**(As to Defendants Point Blank and Safariland)**

416.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

417.     Relator brings these claims against Defendants on behalf of Maryland for treble damages and penalties under the Maryland FCA, MD Code Ann., Gen. Provis. § 8-102(b)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

418.     Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Maryland for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

419.     Additionally, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to Maryland for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

420.     Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

421.     All of these records and/or statements were knowingly false under the Maryland FCA.

422.     These false records and/or statements led Maryland to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Maryland typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  NIJ Standard-0101.06 in testing. On information and belief, Maryland would not have purchased

2  body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not

3  meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would

4  not have paid the price charged by Defendants for such products. Defendants' false records and/or

5  statements were therefore material to their false claims.

6       423.     As a direct and proximate result of the Defendants' violations of the Maryland

7  FCA, MD Code Ann., Gen. Provis. § 8-102(b)(2), Maryland has sustained damages in an amount

8  to be determined at trial and is entitled to damages plus a civil penalty for each violation.

9       424.     Relator respectfully requests the Court enter judgment against the Defendants as

10  follows: (1) awarding Maryland damages in an amount required by law; (2) imposing civil

11  penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator

12  necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum

13  amount allowed to them pursuant to the Maryland FCA; and (5) entering any such other order and

14  further relief as this Court deems proper.

### COUNT NINETEEN — VIOLATIONS OF THE MARYLAND
### FALSE CLAIMS ACT
### MD. CODE ANN., GEN. PROVIS. § 8-102(b)(9)
### (As to Defendants Point Blank and Safariland)

18       425.     Relator re-alleges and incorporates by reference the prior paragraphs as though

19  fully set forth herein.

20       426.     Relator brings these claims against Defendants on behalf of Maryland for treble

21  damages and penalties under the Maryland FCA, Md. Code Ann., Gen. Provis. § 8-102(b)(9), for

22  knowingly making any other false or fraudulent claim against a government entity.

23       427.     Specifically, on information and belief, Defendants made false or fraudulent claims

24  against governmental entities in Maryland for payment for purchases made under the GSA Federal

25  Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded,

26

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 104

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

428.     Additionally, on information and belief, Defendants made false or fraudulent claims against governmental entities in Maryland for payment for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

429.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

430.     All of these claims were knowingly false or fraudulent claims under the Maryland FCA.

431.     As a direct and proximate result of the Defendants' violations of the Maryland FCA, Md. Code Ann., Gen. Provis. § 8-102(b)(9), Maryland has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

432.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Maryland damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  amount allowed to them pursuant to the Maryland FCA; and (5) entering any such other order and

2  further relief as this Court deems proper.

**COUNT TWENTY — VIOLATIONS OF THE MASSACHUSETTS**
**FALSE CLAIMS ACT**
**MASS. GEN. LAWS. CH. 12, § 5B(a)(1)**
**(As to Defendant Point Blank)**

6  433.     Relator re-alleges and incorporates by reference the prior paragraphs as though

7  fully set forth herein.

8  434.     Relator brings these claims against Defendant on behalf of Massachusetts for treble

9  damages and penalties under the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(1), for

10  knowingly presenting or causing to be presented false or fraudulent claims for payment or

11  approval.

12  435.     Specifically, on information and belief, Defendant presented or caused to be

13  presented claims for payment or approval to Massachusetts for purchases made under the GSA

14  Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly

15  disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being

16  certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

17  436.     Additionally, on information and belief, Defendant presented or caused to be

18  presented claims for payment or approval to Massachusetts for purchases made under the NASPO

19  ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant

20  knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and

21  labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

22  437.     Moreover, on information and belief, Defendant presented or caused to be

23  presented claims for payment or approval to Massachusetts for other purchases of body armor

24  accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were

25  falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and

26  providing NIJ threat level IIIA protection.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

438.     Defendant falsely labeled and marketed its accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

439.     All of these claims were knowingly false or fraudulent claims under the Massachusetts FCA.

440.     As a direct and proximate result of the Defendant's violations of the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(1), Massachusetts has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

441.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Massachusetts damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Massachusetts FCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT TWENTY-ONE — VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
### MASS. GEN. LAWS. CH. 12, § 5B(a)(2)
### (As to Defendant Point Blank)

442.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 107

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

443.     Relator brings these claims against Defendant on behalf of Massachusetts for treble damages and penalties under the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

444.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Massachusetts for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

445.     Additionally, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Massachusetts for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

446.     Moreover, on information and belief, Defendant made or caused to be made false records and/or statements material to false or fraudulent claims to Massachusetts for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

447.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

448.     All of these records and/or statements were knowingly false under the Massachusetts FCA.

449.     These false records and/or statements led Massachusetts to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Massachusetts typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Massachusetts would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

450.     As a direct and proximate result of the Defendant's violations of the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(2), Massachusetts has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

451.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Massachusetts damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Massachusetts FCA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT TWENTY-TWO — VIOLATIONS OF THE MASSACHUSETTS
FALSE CLAIMS ACT
MASS. GEN. LAWS. CH. 12, § 5B(a)(8)
(As to Defendant Point Blank)**

452.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

453.     Relator brings these claims against Defendant on behalf of Massachusetts for treble damages and penalties under the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(8), for entering into agreements, contracts and/or understandings with officials of the commonwealth of Massachusetts and/or political subdivisions thereof knowing the information contained therein is false.

454.     Specifically, on information and belief, Defendant entered into agreements, contracts and/or understandings with officials of the commonwealth of Massachusetts and/or political subdivisions thereof with respect to purchases from the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

455.     Additionally, on information and belief, Defendant entered into agreements, contracts and/or understandings with officials of the commonwealth of Massachusetts and/or political subdivisions thereof with respect to purchases from the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

456.     Moreover, on information and belief, Defendant entered into agreements, contracts and/or understandings with officials of the commonwealth of Massachusetts and/or political subdivisions thereof with respect to other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

457.     Defendant falsely labeled and marketed its accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

458.     All of these claims were knowingly false or fraudulent claims under the Massachusetts FCA.

459.     As a direct and proximate result of the Defendant's violations of the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(8), Massachusetts has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

460.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Massachusetts damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Massachusetts FCA; and (5) entering any such other order and further relief as this Court deems proper.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 111

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT TWENTY-THREE — VIOLATIONS OF THE MASSACHUSETTS**
**FALSE CLAIMS ACT**
**MASS. GEN. LAWS. CH. 12, § 5B(a)(10)**
**(As to Defendant Point Blank)**

461.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

462.     Alternatively, Relator brings these claims against Defendant on behalf of Massachusetts for treble damages and penalties under the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(10), for being the beneficiary of inadvertent submissions of false claims who subsequently discovered the falsity of the claims and failed to disclose the false claim to the state or political subdivision within a reasonable time after discovery of the false claim.

463.     Specifically, on information and belief, Defendant was the beneficiary of false claims to Massachusetts for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

464.     Additionally, on information and belief, Defendant was the beneficiary of false claims to Massachusetts for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

465.     Moreover, on information and belief, Defendant was the beneficiary of false claims to Massachusetts for other purchases of body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

466.     These claims were false in that the accessory panels were falsely labeled and marketed by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 112

products applied to the accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact the labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered its Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

467.    On information and belief, Defendant subsequently discovered the prior false labeling and marketing of its accessory panels. For example, in or around 2016 Point Blank made changes to its accessory panel labels, and, in or around November 2018 NIJ issued an Administrative Clarification stating that accessory panels were not authorized to display the NIJ mark.

468.    On information and belief, Defendant did not disclose the prior false claims to Massachusetts or any of its political subdivisions within 60 days after the date on which any of the false claims were identified and still has not disclosed the prior false claims.

469.    As a direct and proximate result of the Defendant's violations of the Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B(a)(10), Massachusetts has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

470.    Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Massachusetts damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Massachusetts FCA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT TWENTY-FOUR — VIOLATIONS OF THE MINNESOTA
FALSE CLAIMS ACT
MINN. STAT. § 15C.02(a)(1)
(As to Defendant Armor Express)**

471.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

472.     Relator brings these claims against Defendant on behalf of Minnesota for treble damages and penalties under the Minnesota FCA, Minn. Stat. § 15C.02(a)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

473.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Minnesota for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

474.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Minnesota for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

475.     Moreover, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Minnesota for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

476.     Defendant falsely labeled and marketed its accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 114

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

477.     All of these claims were knowingly false or fraudulent claims under the Minnesota FCA.

478.     As a direct and proximate result of the Defendant's violations of the Minnesota FCA, Minn. Stat. § 15C.02(a)(1), Minnesota has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

479.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Minnesota damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Minnesota FCA; and (5) entering any such other order and further relief as this Court deems proper.

**COUNT TWENTY-FIVE — VIOLATIONS OF THE MINNESOTA**
**FALSE CLAIMS ACT**
**MINN. STAT. § 15C.02(a)(2)**
**(As to Defendant Armor Express)**

480.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

481.     Relator brings these claims against Defendant on behalf of Minnesota for treble damages and penalties under the Minnesota FCA, Minn. Stat. § 15C.02(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 115

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

482.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Minnesota for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

483.     Additionally, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Minnesota for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

484.     Moreover, on information and belief, Defendant made or caused to be made false records and/or statements material to false or fraudulent claims to Minnesota for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

485.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered its Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

486.     All of these records and/or statements were knowingly false under the Minnesota FCA.

487.     These false records and/or statements led Minnesota to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Minnesota typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Minnesota would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

488.     As a direct and proximate result of the Defendant's violations of the Minnesota FCA, Minn. Stat. § 15C.02(a)(2), Minnesota has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

489.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Minnesota damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Minnesota FCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT TWENTY-SIX — VIOLATIONS OF THE MONTANA
### FALSE CLAIMS ACT
### MONT. CODE ANN. § 17-8-403(1)(a)
### (As to Defendants Point Blank, Armor Express, KDH, and Safariland)

490.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 117

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

491.     Relator brings these claims against Defendants on behalf of Montana for treble damages and penalties under the Montana FCA, Mont. Code Ann. § 17-8-403(1)(a), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

492.     Specifically, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Montana for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

493.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Montana for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

494.     Moreover, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Montana for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

495.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact

2   these products could not pass testing according to NIJ Standard-0101.06.

3   496.   All of these claims were knowingly false or fraudulent claims under the Montana

4   FCA.

5   497.   As a direct and proximate result of the Defendants' violations of the Montana FCA,

6   Mont. Code Ann. § 17-8-403(1)(a), Montana has sustained damages in an amount to be determined

7   at trial and is entitled to damages plus a civil penalty for each violation.

8   498.   Relator respectfully requests the Court enter judgment against the Defendants as

9   follows: (1) awarding Montana damages in an amount required by law; (2) imposing civil penalties

10   as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily

11   incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount

12   allowed to them pursuant to the Montana FCA; and (5) entering any such other order and further

13   relief as this Court deems proper.

14
15   **COUNT TWENTY-SEVEN — VIOLATIONS OF THE MONTANA**
**FALSE CLAIMS ACT**
**MONT. CODE ANN. § 17-8-403(1)(b)**
16   **(As to Defendants Point Blank, Armor Express, KDH, and Safariland)**

17   499.   Relator re-alleges and incorporates by reference the prior paragraphs as though

18   fully set forth herein.

19   500.   Relator brings these claims against Defendants on behalf of Montana for treble

20   damages and penalties under the Montana FCA, Mont. Code Ann. § 17-8-403(1)(b), for knowingly

21   making, using, or causing to be made or used false records and/or statements material to false or

22   fraudulent claims.

23   501.   Specifically, on information and belief, Defendants made, used, or caused to be

24   made or used false records and/or statements material to false or fraudulent claims to Montana for

25   purchases made under the GSA Federal Supply Schedule for body armor accessory panels which

26   Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 119

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

502.     Additionally, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Montana for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

503.     Moreover, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to Montana for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

504.     Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

505.     All of these records and/or statements were knowingly false under the Montana FCA.

506.     These false records and/or statements led Montana to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 120

forth in the NIJ Standard-0101.06 in testing. Montana typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Montana would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendants for such products. Defendants' false records and/or statements were therefore material to their false claims.

507.    As a direct and proximate result of the Defendants' violations of the Montana FCA, Mont. Code Ann. § 17-8-403(1)(b), Montana has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

508.    Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Montana damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the Montana FCA; and (5) entering any such other order and further relief as this Court deems proper.

### COUNT TWENTY-EIGHT — VIOLATIONS OF THE MONTANA FALSE CLAIMS ACT MONT. CODE ANN. § 17-8-403(1)(h) (As to Defendants Point Blank, Armor Express, KDH, and Safariland)

509.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

510.    Alternatively, Relator brings these claims against Defendants on behalf of Montana for treble damages and penalties under the Montana FCA, Mont. Code Ann. § 17-8-403(1)(h), for being the beneficiaries of inadvertent submissions of false or fraudulent claims who subsequently discovered the falsity of the claims and failed to disclose the false claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

511.     Specifically, on information and belief, Defendants were the beneficiaries of false or fraudulent claims to Montana for purchases made under the GSA Federal Supply Schedule for body armor accessory panels were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

512.     Additionally, on information and belief, Defendants were the beneficiaries of false or fraudulent claims to Montana for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

513.     Moreover, on information and belief, Defendants were the beneficiaries of false or fraudulent claims to Montana for other purchases of body armor accessory panels which were falsely or fraudulently labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

514.     These claims were false or fraudulent in that the accessory panels were falsely and fraudulently labeled and marketed by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

515.     On information and belief, Defendants subsequently discovered the prior false and fraudulent labeling and marketing of their accessory panels in or around 2016 when Point Blank made changes to its accessory panel labels, or in or around November 2018 when NIJ issued an

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 122

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Administrative Clarification stating that accessory panels were not authorized to display the NIJ

2    mark.

3        516.        On information and belief, Defendants did not disclose the prior false or fraudulent

4    claims to Montana or any of its governmental entities within a reasonable time after discovery of

5    the false or fraudulent claims and still have not disclosed said claims.

6        517.        As a direct and proximate result of the Defendants' violations of the Montana FCA,

7    Mont. Code Ann. § 17-8-403(1)(h), Montana has sustained damages in an amount to be determined

8    at trial and is entitled to damages plus a civil penalty for each violation.

9        518.        Relator respectfully requests the Court enter judgment against the Defendants as

10   follows: (1) awarding Montana damages in an amount required by law; (2) imposing civil penalties

11   as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily

12   incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount

13   allowed to them pursuant to the Montana FCA; and (5) entering any such other order and further

14   relief as this Court deems proper.

15                   **COUNT TWENTY-NINE — VIOLATIONS OF THE NEW JERSEY**
                     **FALSE CLAIMS ACT**
16                   **N.J. STAT. ANN. § 2A:32C-3(a)**
                     **(As to Defendants Point Blank, Armor Express, and KDH)**
17

18       519.        Relator re-alleges and incorporates by reference the prior paragraphs as though

19   fully set forth herein.

20       520.        Relator brings these claims against Defendants on behalf of New Jersey for treble

21   damages and penalties under the New Jersey False Claims Act ("NJFCA"), N.J. Stat. Ann. §

22   2A:32C-3(a), for knowingly presenting or causing to be presented false or fraudulent claims to

23   employees, officers or agents of the state, or contractors, grantees, or other recipients of state funds

24   for payment or approval.

25       521.        Specifically, on information and belief, Defendants presented or caused to be

26   presented claims for payment or approval to employees, officers or agents of New Jersey, or

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

contractors, grantees, or other recipients of New Jersey state funds for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

522.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to employees, officers or agents of New Jersey, or contractors, grantees, or other recipients of New Jersey state funds for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

523.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

524.     All of these claims were knowingly false or fraudulent claims under the NJFCA.

525.     As a direct and proximate result of the Defendants' violations of the NJFCA, N.J. Stat. Ann. § 2A:32C-3(a), New Jersey has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

526.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding New Jersey damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 124

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NJFCA; and (5) entering any such other order and further relief as this Court deems proper.

**COUNT THIRTY — VIOLATIONS OF THE NEW JERSEY
FALSE CLAIMS ACT
N.J. STAT. ANN. § 2A:32C-3(b)
(As to Defendants Point Blank, Armor Express, and KDH)**

527.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

528.     Relator brings these claims against Defendants on behalf of New Jersey for treble damages and penalties under the NJFCA, N.J. Stat. Ann. § 2A:32C-3(b), for knowingly making, using, or causing to be made or used false records and/or statements to get false or fraudulent claims paid or approved by the state, as defined in N.J. Stat. Ann. § 2A:32C-2.

529.     Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements to get false or fraudulent claims for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection paid or approved by the state of New Jersey.

530.     Additionally, on information and belief, Defendants made or caused to be made false records and/or statements to get false or fraudulent claims for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection paid or approved by the state of New Jersey.

531.     Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the

Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

532.    All of these records and/or statements were knowingly false under the NJFCA.

533.    These false records and/or statements led New Jersey to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. New Jersey typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, New Jersey would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendants for such products. Defendants' false records and/or statements were therefore material to their false claims and were intended to and did get Defendants false or fraudulent claims paid or approved by the state of New Jersey.

534.    As a direct and proximate result of the Defendants' violations of the NJFCA, N.J. Stat. Ann. § 2A:32C-3(b), New Jersey has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

535.    Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding New Jersey as required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NJFCA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-ONE — VIOLATIONS OF THE NEW MEXICO**
**FRAUD AGAINST TAXPAYERS ACT**
**N.M. STAT. ANN. § 44-9-3(A)(1)**
**(As to Defendant Safariland)**

536.    Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

537.    Relator brings these claims against Defendant on behalf of New Mexico for treble damages and penalties under the New Mexico Fraud Against Taxpayer Act ("NMFATA"), N.M. Stat. Ann. § 44-9-3(A)(1), for knowingly presenting or causing to be presented false or fraudulent claims to employees, officers or agents of New Mexico or one of its political subdivisions, or contractors, grantees, or other recipients of funds from New Mexico or one of its political subdivisions, for payment or approval.

538.    Specifically, on information and belief, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to employees, officers or agents of New Mexico or one of its political subdivisions, or contractors, grantees, or other recipients of funds from New Mexico or one of its political subdivisions, for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

539.    Additionally, on information and belief, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to employees, officers or agents of New Mexico or one of its political subdivisions, or contractors, grantees, or other recipients of funds from New Mexico or one of its political subdivisions, for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

540.      Moreover, on information and belief, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to employees, officers or agents of New Mexico or one of its political subdivisions, or contractors, grantees, or other recipients of funds from New Mexico or one of its political subdivisions, for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

541.      Defendant falsely labeled and marketed its accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered their Compliance Testing Program ("CTP") agreements; and      (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

542.      All of these claims were knowingly false or fraudulent claims under the NMFATA.

543.      As a direct and proximate result of the Defendant's violations of the NMFATA, N.M. Stat. Ann. § 44-9-3(A)(1), New Mexico has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

544.      Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding New Mexico damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NMFATA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-TWO — VIOLATIONS OF THE NEW MEXICO
FRAUD AGAINST TAXPAYERS ACT
N.M. STAT. ANN. § 44-9-3(A)(2)
(As to Defendant Safariland)**

545.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

546.     Relator brings these claims against Defendant on behalf of New Mexico for treble damages and penalties under the NMFATA, N.M. Stat. Ann. § 44-9-3(A)(2), for knowingly making or using, or causing to be made or used, false, misleading, or fraudulent records and/or statements to obtain or support the approval of, or the payment on, a false or fraudulent claim.

547.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false, misleading, or fraudulent records and/or statements to obtain or support the approval of or the payment on a false or fraudulent claim to New Mexico for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

548.     Additionally, on information and belief, Defendant made, used, or caused to be made or used false, misleading, or fraudulent records and/or statements to obtain or support the approval of, or the payment on, a false or fraudulent claim to New Mexico for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

549.     Moreover, on information and belief, Defendant made or caused to be made false, misleading, or fraudulent records and/or statements to obtain or support the approval of, or the payment on, a false or fraudulent claim to New Mexico for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

550.     Defendant's false, misleading, or fraudulent records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact its labeling and marketing violated NIJ labeling requirements agreed to by Defendant when it entered its Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

551.     All of these records and/or statements were knowingly false, misleading, or fraudulent under the NMFATA.

552.     These false, misleading, or fraudulent records and/or statements led New Mexico to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. New Mexico typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, New Mexico would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false, misleading, or fraudulent records and/or statements were therefore material to its false or fraudulent claims and were intended to and did obtain or support the approval of or the payment on Defendant's false or fraudulent claims.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

553.     As a direct and proximate result of the Defendant's violations of the NMFATA, N.M. Stat. Ann. § 44-9-3(A)(2), New Mexico has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

554.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding New Mexico damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NMFATA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT THIRTY-THREE — VIOLATIONS OF THE NEW MEXICO FRAUD AGAINST TAXPAYERS ACT
### N.M. STAT. ANN. § 44-9-3(A)(9)
### (As to Defendant Safariland)

555.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

556.     Alternatively, Relator brings these claims against Defendant on behalf of New Mexico for treble damages and penalties under the NMFATA, N.M. Stat. Ann. § 44-9-3(A)(9), for being the beneficiary of inadvertent submissions of false claims who subsequently discovered the falsity of the claims and failed to disclose the false claim to the state or political subdivision within a reasonable time after discovery of the false claim.

557.     Specifically, on information and belief, Defendant was the beneficiary of false claims for payment presented to New Mexico for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which were falsely labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

558.     Additionally, on information and belief, Defendant was the beneficiary of false claims for payment presented to New Mexico for purchases made under the NASPO ValuePoint

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 131

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Cooperative Purchasing Program for body armor accessory panels which were falsely labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

559.     Moreover, on information and belief, Defendant was the beneficiary of false or fraudulent claims for payment presented to New Mexico for other purchases of body armor accessory panels which were falsely labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

560.     These claims were false in that the accessory panels were falsely labeled and marketed by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

561.     On information and belief, Defendant subsequently discovered the prior false labeling and marketing of their accessory panels. For example, in or around 2016 Point Blank made changes to its accessory panel labels, and, in or around November 2018 NIJ issued an Administrative Clarification stating that accessory panels were not authorized to display the NIJ mark.

562.     On information and belief, Defendant did not disclose the prior false claims to New Mexico or the relevant political subdivision within a reasonable time after discovery of the false claims and still has not disclosed said claims.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

563.     As a direct and proximate result of the Defendant's violations of the NMFATA, N.M. Stat. Ann. § 44-9-3(A)(9), New Mexico has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

564.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding New Mexico damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NMFATA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT THIRTY-FOUR — VIOLATIONS OF THE NEW YORK FALSE CLAIMS ACT
### N.Y. STATE FIN. LAW § 189(1)(a)
### (As to Defendant Point Blank)

565.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

566.     Relator brings these claims against Defendant on behalf of New York for treble damages and penalties under the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 189(1)(a), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

567.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to New York for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

568.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to New York for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

569.     Moreover, on information and belief, Defendant presented or caused to be presented claims for payment or approval to New York for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

570.     Defendant falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

571.     All of these claims were knowingly false or fraudulent claims under the NYFCA.

572.     As a direct and proximate result of the Defendant's violations of the NYFCA, N.Y. State Fin. Law § 189(1)(a), New York has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

573.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding New York damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the NYFCA; and (5) entering any such other order and further relief as this Court deems proper.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 134

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-FIVE — VIOLATIONS OF THE NEW YORK**
**FALSE CLAIMS ACT**
**N.Y. STATE FIN. LAW § 189(1)(b)**
**(As to Defendant Point Blank)**

574.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

575.     Relator brings these claims against Defendant on behalf of New York for treble damages and penalties under the NYFCA, N.Y. State Fin. Law § 189(1)(b), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

576.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to New York for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

577.     Additionally, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to New York for purchases made under the NASPO ValuePoint Cooperative Purchasing Program for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

578.     Moreover, on information and belief, Defendant made or caused to be made false records and/or statements material to false or fraudulent claims to New York for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 135

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

579.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

580.     All of these records and/or statements were knowingly false under the NYFCA.

581.     These false records and/or statements led New York to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. New York typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, New York would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

582.     As a direct and proximate result of the Defendant's violations of the NYFCA, N.Y. State Fin. Law § 189(1)(b), New York has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

583.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding New York damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

amount allowed to them pursuant to the NYFCA; and (5) entering any such other order and further relief as this Court deems proper.

### COUNT THIRTY-SIX — VIOLATIONS OF THE RHODE ISLAND
### FALSE CLAIMS ACT
### 9 R.I. GEN. LAWS § 9-1.1-3(a)(1)
### (As to Defendants Point Blank and Safariland)

584.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

585.     Relator brings these claims against Defendants on behalf of Rhode Island for treble damages and penalties under the Rhode Island False Claims Act ("RIFCA"), 9 R.I. Gen. Laws § 9-1.1-3(a)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

586.     Specifically, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Rhode Island for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

587.     Additionally, on information and belief, Defendants presented or caused to be presented claims for payment or approval to Rhode Island for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

588.     Defendants falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 137

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

589.     All of these claims were knowingly false or fraudulent claims under the RIFCA.

590.     As a direct and proximate result of the Defendants' violations of the RIFCA, 9 R.I. Gen. Laws § 9-1.1-3(a)(1), Rhode Island has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

591.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Rhode Island damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the RIFCA; and (5) entering any such other order and further relief as this Court deems proper.

### COUNT THIRTY-SEVEN — VIOLATIONS OF THE RHODE ISLAND FALSE CLAIMS ACT
### 9 R.I. GEN. LAWS § 9-1.1-3(A)(2)
### (As to Defendants Point Blank and Safariland)

592.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

593.     Relator brings these claims against Defendants on behalf of Rhode Island for treble damages and penalties under the RIFCA, 9 R.I. Gen. Laws § 9-1.1-3(a)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

594.     Specifically, on information and belief, Defendants made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Rhode Island for purchases made under the GSA Federal Supply Schedule for body armor accessory panels

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

595.    Additionally, on information and belief, Defendants made or caused to be made false records and/or statements material to false or fraudulent claims to Rhode Island for other purchases of body armor accessory panels which Defendants knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

596.    Defendants' false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to their accessory panels in marketing and labeling; (4) reporting or stating that Defendants were compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendants when they entered their Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

597.    All of these records and/or statements were knowingly false under the RIFCA.

598.    These false records and/or statements led Rhode Island to believe that the Defendants' accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Rhode Island typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Rhode Island would not have purchased body armor accessory panels that were not certified to NIJ Standard-0101.06 or that would not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

alternatively, would not have paid the price charged by Defendants for such products. Defendants' false records and/or statements were therefore material to their false claims.

599.     As a direct and proximate result of the Defendants' violations of the RIFCA, 9 R.I. Gen. Laws § 9-1.1-3(a)(2), Rhode Island has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

600.     Relator respectfully requests the Court enter judgment against the Defendants as follows: (1) awarding Rhode Island damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the RIFCA; and (5) entering any such other order and further relief as this Court deems proper.

## COUNT THIRTY-EIGHT — VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### VA. CODE ANN. § 8.01-216.3(A)(1)
### (As to Defendant Point Blank)

601.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

602.     Relator brings these claims against Defendant on behalf of Virginia for treble damages and penalties under the Virginia Fraud Against Taxpayer Act ("VFATA"), Va. Code Ann. § 8.01-216.3(A)(1), for knowingly presenting or causing to be presented false or fraudulent claims for payment or approval.

603.     Specifically, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Virginia for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

COMPLAINT & JURY DEMAND
FILED UNDER SEAL - 140

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

604.     Additionally, on information and belief, Defendant presented or caused to be presented claims for payment or approval to Virginia for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

605.     Defendant falsely labeled and marketed their accessory panels by: (1) falsely claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) falsely claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) falsely claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) falsely claiming to be compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements agreed to by Defendant when they entered their Compliance Testing Program ("CTP") agreements; and (5) falsely claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

606.     All of these claims were knowingly false or fraudulent claims under the VFATA.

607.     As a direct and proximate result of the Defendant's violations of the VFATA, Va. Code Ann. § 8.01-216.3(A)(1), Virginia has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

608.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Virginia damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the VFATA; and (5) entering any such other order and further relief as this Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-NINE — VIOLATIONS OF THE VIRGINIA
FRAUD AGAINST TAXPAYERS ACT
VA. CODE ANN. § 8.01-216.3(A)(2)
(As to Defendant Point Blank)**

609.     Relator re-alleges and incorporates by reference the prior paragraphs as though fully set forth herein.

610.     Relator brings these claims against Defendant on behalf of Virginia for treble damages and penalties under the VFATA, Va. Code Ann. § 8.01-216.3(A)(2), for knowingly making, using, or causing to be made or used false records and/or statements material to false or fraudulent claims.

611.     Specifically, on information and belief, Defendant made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims to Virginia for purchases made under the GSA Federal Supply Schedule for body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

612.     Additionally, on information and belief, Defendant made or caused to be made false records and/or statements material to false or fraudulent claims to Virginia for other purchases of body armor accessory panels which Defendant knew, recklessly disregarded, or deliberately ignored were falsely or fraudulently marketed and labeled as being certified to NIJ Standard-0101.06 and providing NIJ threat level IIIA protection.

613.     Defendant's false records and/or statements included labeling and marketing materials: (1) claiming that the accessory panels were certified by NIJ when in fact NIJ did not and does not certify accessory panels; (2) claiming that the accessory panels were listed on the Compliant Product List ("CPL"); (3) claiming CPL models from other products applied to its accessory panels in marketing and labeling; (4) reporting or stating that Defendant was compliant with NIJ standards when in fact their labeling and marketing violated NIJ labeling requirements

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

agreed to by Defendant when they entered its Compliance Testing Program ("CTP") agreements; and (5) claiming that the accessory panels offered NIJ threat level IIIA protection when in fact these products could not pass testing according to NIJ Standard-0101.06.

614.     All of these records and/or statements were knowingly false under the VFATA.

615.     These false records and/or statements led Virginia to believe that the Defendant's accessory panels were certified to NIJ Standard-0101.06 and would meet minimum standards set forth in the NIJ Standard-0101.06 in testing. Virginia typically requires the body armor products it purchases to be certified to NIJ Standard-0101.06 and meet minimum standards set forth in the NIJ Standard-0101.06 in testing. On information and belief, Virginia would not have purchased Defendant's accessory panels if it had known that they were not certified to NIJ Standard-0101.06 or that did not meet minimum standards set forth in the NIJ Standard-0101.06 in testing or, alternatively, would not have paid the price charged by Defendant for such products. Defendant's false records and/or statements were therefore material to their false claims.

616.     As a direct and proximate result of the Defendant's violations of the VFATA, Va. Code Ann. § 8.01-216.3(A)(2), Virginia has sustained damages in an amount to be determined at trial and is entitled to damages plus a civil penalty for each violation.

617.     Relator respectfully requests the Court enter judgment against the Defendant as follows: (1) awarding Virginia damages in an amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the VFATA; and (5) entering any such other order and further relief as this Court deems proper.

## VII.    PRAYER FOR RELIEF

618.     WHEREFORE, Relator respectfully requests this Court enter judgment against the Defendants as follows: (1) awarding the United States and the States damages in the amount required by law; (2) imposing civil penalties as are required by law; (3) awarding attorneys' fees,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

costs, and expenses that Relator necessarily incurred in bringing and pressing this case forward; (4) awarding Relator the maximum amount allowed to them pursuant to the FCA and equivalent State statutes; and (5) entering any such other order and further relief as this Court deems proper.

## VIII.   DEMAND FOR JURY TRIAL

619.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.


Respectfully submitted this 1st day of November, 2019.

KELLER ROHRBACK L.L.P.


By _____


By _____

Laura R. Gerber, WSBA #34981
Felicia J. Craick, WSBA #54505
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
lgerber@kellerrohrback.com
fcraick@kellerrohrback.com

*Attorneys for Relator*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384